## McMURRY *v.* SUPREME LODGE, KNIGHTS OF HONOR.[1]

*(Circuit Court, M. D. Tennessee. April 24, 1884.)*

1. KNIGHTS OF HONOR—"GOOD STANDING" OF MEMBER.
    "Good standing," within the meaning of the laws of the order of the Knights of Honor, implies a full and fair compliance with those laws, in the payment of assessments and dues.

2. SAME—ARREARS OF ASSESSMENT—BENEFITS.
    A member who is largely in arrears for assessments and dues is not "in good standing," within the meaning of his benefit certificate, and if he dies when so in arrears his beneficiary is not entitled to the payment of the benefit.

The case was heard before the circuit judge, without a jury, upon an agreed statement of facts.

The plaintiff brought suit against the defendant, as "a beneficiary organization upon the mutual assessment plan," upon a benefit certificate issued July 5, 1878, to Charles S. McMurry, providing for the payment of $2,000, "as a benefit, upon due notice of his death and the surrender of this certificate, to such person or persons as he may, by will or entry on the record-book of this lodge, or on the face of this certificate, direct the same to be paid, provided he is in good standing

[1] From the Central Law Journal.

when he dies." The plaintiff was named as the beneficiary on the face of the certificate.

McMurry paid regularly his assessments, of one dollar each, until February 23, 1881, when he ceased paying. After this, Guthrie Lodge, No. 1,054, of which he was a member, paid four assessments for him, voluntarily, to the supreme lodge of the order. He did not reimburse Guthrie Lodge for these payments, and its officers thereupon dropped his name from their rolls, and reported him as "suspended;" but the lodge did not suspend him by any vote which was recorded on its minutes. Prior to September 15, 1881, four other assessments had been called, and were forwarded by Guthrie Lodge to the supreme lodge, on none of which had any payments been made by McMurry. The 30 days' time allowed to members by the law of the order for the payment of these assessments had fully expired before McMurry died, which was on October 11, 1881. He had not paid dues to his lodge since January 1, 1881.

The laws of the order, in force in 1878 and in 1881, contained these provisions:

"Art. VII., sec. 1. Each member of this lodge shall pay as dues, to commence with the date of receiving the degree of manhood, such sum as shall be prescribed in the by-laws, not less than twenty-five cents per month, which shall be due and payable quarterly in advance, on the last meeting night in March, June, September, and December, and a brother is in good standing until the dues so paid are consumed.

"Sec. 2. Any member who may become in arrears for dues or fines to this lodge shall not be entitled to vote, hold office, nor shall he be entitled to benefits; and when six months in arrears for dues or fines, or when he fails to comply with section 3 of law xv., he shall be suspended from the lodge."

"Law xv., sec. 3. Each member shall pay the amount due, on the notice of the reporter of his lodge, within thirty days from the date of such notice, and any member failing to pay such assessment within thirty days shall be suspended from his lodge."

Other regulations provided that only members "in good standing" could become representatives in the superior lodges of the order, or be allowed to receive sick benefits, or have the privilege of a withdrawal card for six months. It was also required that the notice of the death of a member, for the payment of a benefit thereupon, should certify "that he was in good standing."

In 1879 the following decision, made by the supreme dictator as executive head of the order, in answer to a question propounded, had been approved by the supreme lodge, the highest legislative body of the order:

"Question 20. If a member fails to pay an assessment within the thirty days allowed by the constitution, and dies between the expiration of the thirty days and the next meeting of the lodge, would his family or heirs be entitled to the death benefit? Answer. Yes. A member must be suspended in order to forfeit his death benefit, and he cannot be suspended after his decease."

The charter of the defendant empowered it to pay from its widows' and orphans' benefit fund, "on satisfactory evidence of the death of

a member of the corporation, who has complied with its lawful requirements, a sum not exceeding five thousand dollars," "to his family, or as he may direct."

*Colyar, Marks & Childress,* for plaintiff.

*James O. Pierce,* for defendant.

BAXTER, J. 1. The rights of the plaintiff are to be determined in accordance with the rules established by the constitution and laws of the order.

2. Decision No. 20, made by the supreme dictator in 1879, that a member must be suspended in order to forfeit his death benefit, applied to a case where a member died after the expiration of 30 days from the call of the assessment, and before the next meeting of his lodge, and does not apply to the present case.

3. The laws and rules of the order, in force in 1881, did not declare that a member was always in good standing until he had been legally suspended by a valid act of his lodge; and the failure of Guthrie Lodge No. 1,054 to legally suspend McMurry is not conclusive of this case.

4. McMurry having been at the time of his death in arrears for nine months dues to his lodge, and in arrears for eight assessments to the widows' and orphans' benefit fund, the time for the collection of which had fully expired, was by reason of these facts not in good standing, within the meaning of the benefit certificate sued on, and the plaintiff, therefore, cannot recover.

5. Payment of the assessment by the members is essential to the successful operation of the widows' and orphans' benefit fund of the order, as the plan of the same is exhibited in the constitution and laws of the order.