MARIA BORGRAEFE, Respondent, v. SUPREME LODGE, KNIGHTS AND LADIES OF HONOR, Appellant.

St. Louis Court of Appeals, May 4, 1886.

1. BENEVOLENT SOCIETIES — SUSPENSION OF MEMBERS — REINSTATEMENT.—The beneficiaries of a member of a benevolent society who stands suspended for non-payment of assessments, by operation of the laws of the society, at the time of his death, can not recover on the benefit certificate on the ground that the subordinate lodge of which he was a member had continued to treat him as a member, and to treat his unpaid dues to the supreme lodge as dues payable to the subordinate lodge, for which it had extended him credit.

2. ——— The unauthorized acts of the ministerial officers of a subordinate lodge can not operate to dispense with a member's duty to comply with the laws of the supreme lodge.

3. ——— Under a law of a benevolent society, which makes the non-payment of assessments for a given period after notice operate as a suspension *ipso facto* of the delinquent member, it is not necessary that the suspension should be judicially determined by any judicatory of the order.

4. PRACTICE—VERDICT CONTRARY TO EVIDENCE.—A verdict against evidence, which is sufficient to make a case or defence, and which is clear, unimpeached, consistent with itself, and against which no suspicious circumstance is shown, will be set aside as being the result of manifest mistake.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Reversed and remanded.*

HERMANN & REYBURN, for the appellant: The members of such societies are conclusively presumed to know their laws. *Coleman v. Supreme Lodge*, 18 Mo. App. 189; *Yoe v. Howard Mut. Ben. Ass'n*, 63 Md. 90; *Aid Ass'n v. Leopold*, 101 Pa. 111; *Supreme Lodge v. Graw*, 60 Tex. 569; *St. Patrick Society v. McVey*, 92 Pa. 510; *Dolan v. Court Good Samaritan*, 128 Mass. 439.

Where the contract, as defined in the laws of the society, makes the payments of assessments, or the member's being in "good standing," a condition to the right of sharing in the benefit fund, a failure to pay such assessments, or to remain "in good standing," will prevent a recovery on the certificate. *Benevolent Society v. Baldwin*, 86 Ill. 479 ; *Madeira v. Mut. Ben. Soc.*, 16 Fed. Rep. 749 ; *Zeigler v. Mut. Aid Ass'n*, 1 McGloin (La.) 284 ; *Dolan v. Court Good Samaritan*, 129 Mass. 437 ; *Karcher v. Supreme Lodge*, 137 Mass. 368 ; *Knights Golden Rule v. Ainsworth*, 71 Ala. 436. The non-payment of contributions to the relief fund, at the time prescribed by the laws of the society, will preclude participation in said fund ; and that, even though the defaulting member has not been formally suspended for such default, and though prevented by sickness from making payment. *McMurry v. Supreme Lodge*, 20 Fed. Rep. 107 ; *Supreme Council v. McCurd*, 111 Ill. 284 ; *Fisher v. Schiller Lodge*, 11 Ins. Law Jour. 164 ; *Ancient Order of United Workmen v. Moore*, 9 Ins. Law Jour. 485. A benevolent society is not estopped from enforcing a forfeiture of a policy for non-payment of dues, by the fact that one of its subagents attempted, without special authority for the act, to collect the past due payments. *Mason's Ben. Soc. v. Baldwin*, 86 Ill. 479 ; *Hall v. Supreme Lodge*, 24 Fed. Rep. 450 ; *Agnew v. Grand Lodge*, 17 Mo. App. 254.

George D. Reynolds and Charles W. Holtcamp, for the respondent : It must appear by the evidence : (1) That the officers of the defendant were entitled to make the October assessment or call. (2) That they did make it in the. manner provided by the law of the society. (3) That Borgraefe was lawfully notified of the assessment. (4) That he was suspended in the manner provided by the laws of the order. All these things must appear, or the pretended suspension is void. *Olmstead v. Farmer's Mutual Insurance Co.*, 50 Mich. 200 ; *Castner v. Farmer's Mutual Insurance Co.*, 50 Mich. 273 ;

*Knights of Honor v. Johnson*, 78 Ind. 110; *Agnew v. Grand Lodge*, 17 Mo. App. 254.   There was a total failure of proof of these affirmative defences, and the pretended suspension is, therefore, void.  *Roswell v. Eq. Aid Asso ciation*, 12 Ins. Law Jour. 695; s. c., 13 Fed. Rep. 840; *Baker v. Citizens' Mutual Fire Ins. Co.*, 51 Mich. 243; *Pacific M. Ins. Co. v. Gall*, 49 Mo. 329; *Woolsey v. Odd Fellows*, 1 Am. and Eng. Corp. Cases, 175; Hirschl on Law Fraternities, etc., 31–35.  The suspension was not made in the manner required by the laws of the order. *Schew v. Grand Lodge*, 17 Fed. Rep. 214.  The lodge waived the forfeiture or the right to make it.  Bliss on Life Insurance, sect. 270; *Frost v. Saratoga Mut. Ins. Co.*, 5 Denio, 154; *Masonic Mut. Ben. v. Beck*, 77 Ind. 203; *Thompson v. St. L. Mut. Life Ins. Co.*, 52 Mo. 469; *Hanley v. Life Ass'n*, 69 Mo. 380; s. c., 4 Mo. App. 253.

THOMPSON, J., delivered the opinion of the court.

This action is brought by the widow of Fred. Borgraefe, deceased, to recover the sum of $1,000, claimed to be due under the terms of a certificate of membership of her deceased husband, Fred. Borgraefe, in Ada lodge, number 883, of the organization known as the Knights and Ladies of Honor.  The answer is: (1) A general denial.  (2) An averment that prior to his death, the deceased voluntarily withdrew from Ada lodge, whereby he forfeited his rights under the benefit certificate. (3) That he did not comply with the rules, laws, and requirements of the order, in that he failed to pay a certain assessment, described as assessment number 138, class A, whereby he had, prior to his death, become suspended by operation of the laws of the order, and that he had never been reinstated, but had died while so suspended. The reply contains a general denial of the new matter set up in the answer; sets out a substantially correct copy of section three, of law two, of the supreme lodge (the

defendant); states that Ada lodge, under authority given
it by the laws of the order, adopted a by-law whereby
the lodge agreed to pay to the supreme lodge the dues of
any member to the relief fund, who was sick or disabled,
to prevent suspension for the default; avers that, after
the adoption of this by-law, the deceased was taken sick
and became entitled to the benefits of it; and that, as a
matter of fact, Ada lodge did pay for him the said assess-
ment number 138, class A, and the subsequently accruing
dues, until the time of his death.

A trial before a jury resulted in a verdict and judg-
ment for the plaintiff for the amount claimed with
interest.

At the trial the plaintiff offered in evidence the
benefit certificate held by her deceased husband, the
material portion of which is as follows : "This certificate,
issued by the supreme lodge, Knights and Ladies of
Honor, witnesseth, that Fred. Borgraefe, a member of
Ada lodge, number 883 of said order, located at St. Louis,
is entitled to all the rights and privileges of membership
in the order of Knights and Ladies of Honor, and to par-
ticipate in the relief fund of the order to the amount of
$1,000, which sum shall, at his death, be paid to his wife,
Maria Borgraefe. This certificate is issued upon the
expressed condition that said F. Borgraefe shall, in every
particular, while a member of said order, comply with
all the laws, rules, and requirements thereof."

The plaintiff proved that the deceased had died on
December 13, 1884; that she had notified the lodge of
his death, demanded payment of the certificate, and that
her demand had been refused.

The facts relied on by the defendant were developed,
partly on cross-examination of the plaintiff, partly by
witnesses who testified for the defendant, and partly by
instruments of writing put in evidence by the defendant.
This evidence tended to show that the deceased was a
member in good standing of Ada lodge down to the
twelfth of September, 1884, on which day the plaintiff

had paid his assessments for September; that, on the twenty-fifth of September, the plaintiff had attended a meeting of the lodge, paid the price of what is known as a withdrawal card, presented her husband's resignation as an officer of the lodge, and told the secretary that her husband was too ill to attend that night. No payment of any kind was made for her husband or herself to the lodge after that date. The defendant's evidence tended to show that this withdrawal card had been demanded by the deceased for himself and wife a week before, namely: On September 18, and that the lodge had refused to grant such card to the deceased, because he was a trustee of the lodge, and had not resigned his office; that, on September 25, his resignation was again offered, but was not acted upon at that time, because the business portion of the meeting had already closed when it was presented; that, on October 2, it was again offered, but that the matter was tabled until the lodge should obtain further information regarding it; that, on October 5, the secretary of the lodge notified the deceased to appear at the meeting of the lodge to be held on October 16, and to bring his baptismal certificate with him, and that if he had not one, to get it; that, on October 9, the deceased, at a meeting of the lodge, caused the following letter, signed by him, to be presented to the lodge:

"ST. LOUIS, October 9, 1884.

"*Sir Knights and Ladies of Ada Lodge, No. 883:*

"As I have already had so much work and annoyance with the lodge, and now have other use for my money than for the required baptismal certificate, I would, therefore, hereby inform you that I no longer regard myself as a member of the order, wherefore I now demand return of the papers belonging to me, as soon as possible."

That at the meeting at which the above letter was presented, October 16, it was resolved not to grant the

deceased a withdrawal card, because he had refused to obey the request of the secretary to bring the papers demanded of him.

The defendant offered to prove the reason why the lodge required the deceased to produce his baptismal certificate, but this the court refused to permit. We do not see any error in this ruling. We do not see any relevancy in the evidence sought to be adduced. It is evident that the deceased and the lodge, or the ruling majority in the lodge, had gotten into a quarrel, and whether the lodge were acting justly or unjustly with him does not seem to be an important inquiry in the case, as this is not a proceeding by a member of a society who is unjustly dealt with to require the society to extend to him any right therein, to which he might, under its laws and regulations, be entitled. The real question in issue was whether Borgraefe was a member of the society at the time of his death.

The evidence given for the defendant tended to show that, whenever the fund in the treasury of the defendant, the supreme lodge, to the credit of class A, in which class the deceased belonged, was less than $1,000, the amount sufficient to pay a single benefit, it was the duty of the secretary of the defendant, under the laws of the order, to make a call upon the subordinate lodges for contributions to replenish this fund, and that, in pursuance of this duty, he issued a call for the assessment known as assessment number 138, class A. This statement will dispose of the contention of the plaintiff that there is no evidence in the record tending to show that this assessment was regularly made, and hence that the non-payment of it can not, under any circumstances, be made the ground of refusing to pay the death benefit for which this action is brought. The objection is clearly not well taken, and on this point this record presents no resemblance to the record in the case of *Agnew v. Grand Lodge* (17 Mo. App. 254).

The defendant also gave evidence tending to show

that when notice of this assessment was received from the secretary of the supreme lodge, the secretary of Ada lodge, in pursuance of the rules of the order, sent to the deceased, on or about the first of October, 1884, by mail, the usual notice to pay his portion of the assessment, which was eighty-five cents. The evidence of the plaintiff to the effect that, after the death of the deceased, there were found in the house three notices of assessment, issued by the secretary of Ada lodge to the deceased, and mailed to him during the months of October, November, and December, 1884, calling upon him to pay assessments for those months, tends to show that notice of this assessment, number 138, was actually received by him. The defendant also gave evidence tending to show that, either on the first or second of November, 1884, the financial secretary of Ada lodge, acting in accordance with the laws and rules of the order, sent to the deceased and to the plaintiff, enclosed in separate envelopes, one directed to the deceased and the other to the plaintiff, a notice called a delinquent notice, in the following form:

"HALL OF ADA LODGE, No. 883,
"ST. LOUIS, Mo., November 1, 1884.

"*To Brother F. Borgraefe:*

"You are hereby notified that assessment No. 138, class A, dated October 1, 1884, on the death of ———, is past due. In accordance with the law, I have been instructed to issue this second notice. If the above assessment, and added fee of ten cents, is not paid within fifteen days from this date, you will stand suspended from the class of which the assessment issued, without further notice. If the assessment is issued upon the members of class A, and it is not paid, as above, you will stand suspended from the lodge and order without further notice.

"FRED MANN,
"Financial Secretary.

"Amount of assessment, 85 cents; added fee, 10 cents; total, 95 cents."

Assessment number 138, class A, not having been paid by the deceased, or by the plaintiff, the defendant gave evidence tending to show that on November 18, 1884, the financial secretary of Ada lodge mailed to the officer of the defendant, called the supreme treasurer, a report of assessment number 138, class A, in which it was stated that the deceased had failed to pay his assessment, and that in consequence thereof he had been suspended on the sixteenth of November. The defendant also gave evidence tending to show that neither the financial secretary of Ada lodge, nor the lodge, had ever transmitted to the defendant, money to pay the deceased's portion of assessment number 138; that on the eighteenth of November, when the financial secretary of Ada lodge made this report to the treasurer of the supreme lodge, the deceased was suspended upon the books of the financial secretary, and that he was never afterward reinstated. No effort was made to show that he had ever been reinstated in conformity with the rules of the order regulating the reinstatement of suspended members; nor was there any evidence tending to show that Ada lodge had advanced to the grand lodge for the deceased his assessment dues in respect of assessment number 138, class A, extending to him credit for the same, so as to prevent his suspension, as set up in the plaintiff's replication, by operation of the laws of the order.

The laws and rules of the order governing the supreme, and also the subordinate, lodges, were put in evidence at very considerable length. Many of them are irrelevant to this inquiry, and, therefore, confusing. We take it to have been conceded at the trial, and such was the fact, that under these laws and regulations the deceased was bound to pay assessment number 138, class A, in order to preserve his membership in the order, and entitle the beneficiary, designated by him, to the benefits stipulated for in his certificate of membership in case of his death. It then becomes material to inquire no further than what the rules of the order were touching the suspension of

members for non-payment of dues and the reinstatement of suspended members. The rules touching the suspension of members for non-payment of dues are embodied in what is called law two, sections three and five, and law four, section one, which are as follows:

"SECTION 3. On the death of a member, the secretary of the lodge shall immediately forward the supreme secretary, supreme medical examiner, and grand secretary (if within a grand jurisdiction), a notice of such death; such notice must state the name and age, the date of admission to the relief fund, the date of death, and the amount paid into the relief fund, and that they were entitled to the benefits the order pays. After paying said benefit, if the sum of one thousand dollars is left in the supreme treasury to the credit of this class, no assessment will be made; but when less than one thousand dollars is left in the supreme treasury, after paying a benefit, a call will be made on each lodge for the money, in the treasury, of each member of this class, who was admitted to the relief fund on and prior to the date of death of the deceased member, and each member liable to assessment shall be notified of said death by the secretary, under seal of the lodge, and assessed to replace in the treasury the amount forwarded to the supreme treasurer, and such notice shall be official and sufficient notice to every member of the lodge. Each member shall pay the amount due on the notice of the secretary within thirty days from the date of such notice; if at the expiration of that time the member has failed to pay such assessments, the financial secretary shall issue a second notice, with an added fee of ten cents, again calling for its payment and the fee within fifteen days. If such demand is not complied with, the member shall stand suspended from the lodge without further notice. All added fees shall become a part of the general fund of the lodge."

"SECTION 5. The notices required to be given under sections three and four of this law, may be given through the postoffice, by depositing the same, properly enclosed,

in a post-paid wrapper, or envelope, in the postoffice of the party giving it, directed to the party to be notified, at his or her last or usual place of residence or business; such notices may also be given on postal cards, such cards to be deposited and directed as hereinafter mentioned."

"Law IV., Section 1. Of members—Any member who may become three months in arrears for dues to her lodge shall not be entitled to vote, hold office, nor be entitled to benefits, and when six months in arrears for dues, or fails to comply with section three, law two, shall be suspended from the lodge. Suspension from a subordinate lodge deprives a member from all rights and privileges in both grand and supreme lodges, as well as in subordinate lodges."

The rules governing the reinstatement of suspended members are prescribed in what is known as law five, section one, which reads as follow:

"Section 1. Of members—Members of the order suspended for non-payment of dues, fines, or assessments, and delinquent notice fees, applying to be reinstated, must pay the full amount they are in arrears for dues, fines, or assessments, and delinquent notice fees, charged at date of suspension. They shall also pay all assessments upon deaths occurring prior to suspension."

A suspended member shall be reinstated by the financial secretary without medical re-examination or ballot, provided payment of all assessments and delinquent notice fees, due at time of suspension, be made within thirty days after suspension, which act of reinstatement shall be reported by the financial secretary at the first session of the lodge after such reinstation.

If thirty days or more have elapsed since suspension, the suspended member shall make application for reinstatement upon the form designated as "application for reinstatement," and a medical certificate of the form prescribed, must be obtained from the subordinate medical examiner, which certificate shall be submitted to the

supreme medical examiner. If approved, a ballot shall then be spread, and if a majority of the ballots cast are favorable, the applicant shall be declared reinstated, otherwise he shall be declared rejected, provided all applications for reinstatement shall be made within one year after suspension, otherwise the applicant shall only be admitted as a new member, paying assessments at the age when re-admitted.

Another rule of the order, known as law sixteen, contains this important provision:

"The subordinate lodge constitution, as adopted, and from time to time amended by the supreme lodge, shall be the constitution of all subordinate lodges, and no grand lodge shall have the power to alter or amend the same."

Article eight, of what is known as the "constitution governing subordinate lodges," contains this provision regarding "sick benefits":

"Members in good standing, and not in arrears for dues or fines, having six months previously obtained the degree of protection, who may become disabled by sickness or other disability from following their usual business, or some other occupation, may be entitled to receive from the funds of the lodge such weekly benefits as the lodge may in its by-laws prescribe, provided such sickness or disability is not parturition or childbirth, or originate from intemperance, vicious, or other immoral conduct or practice; and the lodge may, by by-law, enact that no benefit may be paid for the first week's sickness or disability. Members who may be taken sick, or become disabled while in arrears to the lodge for dues or fines, can not, by paying the same, become beneficial, nor receive benefits during such sickness or disability. Members, while sick or disabled, who become in arrears for dues or assessments, a subordinate lodge may, out of its general fund, pay the same, for the purpose of preventing the suspension of delinquent members. Members shall not be entitled to benefits while under charges under

the penal provisions of the law, but if, after due trial, they have been acquitted or exonerated, they shall be entitled to receive weekly benefits if otherwise entitled thereto.''

It is perceived that, according to this article, a member in good standing who is taken sick at any time when he is in arrears for dues, ''may be entitled to receive from the funds of the lodge such weekly benefits as the lodge may, in its by-laws, prescribe,'' etc. But there is no question here as to the payment of what are termed, ''sick benefits,'' which are understood to be weekly allowances paid by the lodge out of its general fund to a member during sickness. It is also perceived that the above article contains this provision : ''Members, while sick or disabled, who become in arrears for dues or assessments, a subordinate lodge may, out of its general fund, pay the same, for the purpose of preventing the suspension of delinquent members.'' This we understand to be the clause of the laws of the order on which the claim set up in the plaintiff's replication is based—that Ada lodge, under authority given it by the laws of the order, had adopted a by-law whereby the lodge had agreed to pay to the supreme lodge the dues of any member to the relief fund, who was sick or disabled, to prevent suspension for default; that, after the adoption of said by-law, the deceased was taken sick and was hence entitled to the benefit thereof ; and that, as a matter of fact, Ada lodge did pay for the deceased assessment number 138, and his subsequently accruing dues until the time of his death. It is perceived that the language above quoted is permissive. The word *may* is used. The lodge *may*, under such circumstances pay to the supreme lodge the assessment of the sick member so as to prevent his suspension. It may, and it may not. It may, if it has funds and if it resolves to do so, but if it have no funds, or if the attitude of the sick member towards the lodge, or his standing in the lodge, be such that the lodge do not see fit to extend to him this credit, it is not obliged, by the above

language, to do so. There is not a particle of evidence in this record tending to show that Ada lodge ever extended to the deceased such a credit, or ever advanced money to the supreme lodge to pay assessment number 138, class A. The claim of the plaintiff under this head would necessarily drive us to the length of holding that the word *may* in the above statute of the order is to read *shall;* that, a member being sick, the credit of the lodge is extended to him *ipso facto*, and that the lodge becomes *ipso facto* substituted in his place in relation to the supreme lodge in respect of his liability to pay his assessments, and this, although the member has repudiated his membership in the most solemn manner. Such a construction, we think, would do violence to the meaning of the language used.

Considerable stress was laid upon the acts of the secretary and financial secretary of Ada lodge towards the deceased after he sent in his notification that he had ceased to be a member of the order, on October 9. On October 28, his name still remaining on the roll of members of the order, the secretary notified him of his appointment as a member of the visiting committee. It is shown that the members were appointed on such committees in rotation, and the secretary sent the notice to him in the ordinary routine of the secretary's duties. On November 1, the secretary mailed to him a notice of another assessment made by the grand lodge upon the members of the class in which he was, to pay a death benefit, and on December 1, the secretary mailed him another notice of another like assessment. There was evidence tending to show that the secretary had carried the name of the deceased on the roll of membership until after his death. Considerable importance appears to be attached by the plaintiff to these facts, as showing that Ada lodge treated the deceased as a member down to the time of his death. The court seems to have attached a similar importance to them, for the court refused the instructions requested by

both parties, and submitted the cause to the jury upon·
the following instruction, given of its own motion:

"Under the pleadings and the charter, and other
written laws, by-laws, etc., governing the defendant order,
.and other evidence, you should return a verdict in this
.cause for the defendant, unless you believe, and find,
from the evidence, that notwithstanding the letter of
deceased of October 9, 1884, and his omission to pay the
assessments mentioned in evidence, the Ada lodge, until
the time of his death, continued to and did regard and
treat Fred. Borgraefe, the deceased, as a member thereof,
and intended to and did regard and treat the dues by
him payable to said lodge, or order, as debts due to said
lodge, for which said lodge intended to and did extend
him credit, and so continued to do to the time of his
death.   Should you so find, you will return a verdict for
the plaintiff for $1,090, less such sums as you may find,
from the evidence, said deceased owed said lodge, or
.order, at the time of his death, with interest on the bal-
.ance so found at six per cent. per annum from the date,
when you believe from the evidence payment of said
.claim was demanded of the defendant order by the plain-
tiff, and unless you find the facts as aforesaid, you should
return a verdict for the defendant."

This act of the secretary of Ada lodge is all the evi-
dence which we gather from the record tending to show
that "Ada lodge, until the time of his death, continued
to and did treat Fred. Borgraefe, the deceased, as a mem-
ber thereof, and intended to and did regard and treat
the dues by him payable to said lodge, or order, as debts
due to said lodge, for which said lodge intended to and
did extend to him credit, and so continued to do to the
time of his death," as recited in the above instruction.
We, on the other hand, attach no importance whatever
to these acts of a merely ministerial officer of the subor-
dinate lodge to which the deceased had belonged. All the
members of such an order are conclusively presumed to
know its laws and rules. *Coleman v. Supreme Lodge,*

18 Mo. App. 189. The benefit certificate, which is the foundation of this suit, according to its recitals, "is issued upon the expressed condition that said Fred. Borgraefe shall, in every particular, while a member of said order, comply with all the laws, rules, and requirements thereof." It was one of these laws and rules (law two, section three, above quoted) that if, after the second notice, or warning, sent by the financial secretary to a member to pay an assessment, the assessment should not be paid within fifteen days, the member should stand suspended from the lodge without further notice. It was another of these laws and rules that the notice above required might "be given through the postoffice by depositing the same, properly enclosed in a post-paid wrapper, or envelope, in the postoffice of the party giving it, directed to the party to be notified, at his or her last or usual place of residence or business." The evidence tends to show that this second notice or warning was given in the manner here prescribed. If it was thus given, it is immaterial whether it was in fact received or not. The rules of the order having prescribed what shall be deemed notice, that notice, if not, in a particular case, actual notice, is constructive notice, the same as a publication in a newspaper of a notice in a judicial proceeding, and the effect is precisely the same whether the notice is received or not. Unless payment is made within the fifteen days prescribed, the member stands suspended by operation of the rules of the order. The subordinate lodges are no doubt the agents of the supreme lodge in dealings with the members for many purposes, and in those cases where the subordinate lodges act through their ministerial officers, and where the latter act in conformity with the rules governing the lodges and the order, these officers may become *pro hac vice* the agents of the subordinate lodges. But it is not shown to us that these officers are anywhere endowed with power to set aside the rules of the order, or that the subordinate lodges are endowed with such a faculty. On the other hand, it is perceived

by the provision of the laws of the order aboved quoted (law sixteen), that no grand lodge has power even to alter or amend the laws governing the subordinate lodges. The doctrine of waiver, which is often appealed to to prevent forfeitures in the case of policies of insurance, has no application to the forfeitures of memberships in these orders. The laws and rules governing the different branches of such an order, are in the nature of contracts *among all the members*, and, considering the widespread extent of these organizations, and the very great extent to which these schemes of benevolence have taken the place of life insurance, especially among the working classes, it is highly important as a principle of public policy that, in cases of this kind, their rules and regulations should be substantially upheld by the judicial courts. Unless this is done, these organizations can not be maintained, their benevolent purposes can not be carried out, and their benefit certificates cease to afford any certain indemnity to the families of their members in the case of death. Our view is that there was no substantial evidence tending to show that Ada lodge had continued to treat the deceased as a member, and to extend to him credit for his dues until the time of his death, as recited in the above instruction. Nor do we think that it would have entitled the plaintiff to recover if Ada lodge had continued to treat the deceased as a member, unless Ada lodge had in fact advanced the delinquent assessment to the supreme lodge, in conformity with the provisions of article eight, of the constitution, governing subordinate lodges, above quoted, and there is no evidence tending to show that this was done. On the contrary, the financial secretary of Ada lodge returned to the supreme lodge the fact of his delinquency and suspension.

It was argued in behalf of the plaintiff, at the bar, that there was no forfeiture in this case, because the declaration of a forfeiture is a judicial act, and neither Ada lodge, nor any other judicatory having the power

to declare a forfeiture, had so adjudged.  This contention
has no foundation, in view of the fact that under the
provision of section three, of law two, above quoted, it
is not necessary that the lodge, or any other judicatory
of the order, should adjudge a forfeiture against a delin-
quent member for non-payment of an assessment for a
death benefit, but that, on the contrary, the suspension
attaches by operation of law.   There is, in view of this
provision, a plain distinction between this case and cases
which have arisen under the constating instruments of
mutual insurance companies, and other benevolent orders
of this character, where the governing statute recites that
for the non-payment of dues or other named delinquency,
the member *may be* suspended by the lodge or other
judicatory.   Here the member is not suspended, until
the lodge or other designated judicatory exercises the
power of suspension.   *Olmstead v. Mutual Fire Insur-
ance Co.*, 50 Mich. 200.   The reason is that, whatever
right the lodge, or the order, may have against the mem-
ber for an infraction of its rules, must be sought in con-
formity with the laws and rules of the order.   The
remedy therein prescribed must be exhausted before
resort can be had to the judicial courts.   *Chamberlain
v. Lincoln*, 129 Mass. 170.   But where, as in this case,
the suspension attaches by operation of law upon an
event named, and the member dies before the suspension
has been set aside, in conformity with the rules of the
order, there can be no recovery upon his benefit certifi-
cate.   It was so held by the supreme court of Illinois in
a case much stronger than this, where the provision of
the governing law was that, "any member failing to pay
such assessments, within ten days after notice has been
served upon him, shall forfeit his membership in the
society and the benefit therefrom."   Under this provi-
sion it was held that the non-payment of an assessment
after ten days, *ipso facto*, worked a forfeiture and pre-
vented the beneficiary, in the event of the member dying
thereafter during the period of suspension, from recov-

ering the amount named in the benefit certificate.  *Illinois Mason's Benevolent Society v. Baldwin*, 86 Ill. 479.

We wish to be carefully understood as having taken into consideration the provisions of law four of this order, relating to the suspension of members who become three months in arrears for dues *to the lodge*.  By section one of that law, it is provided that any member thus delinquent, "shall be suspended from the (subordinate) lodge."  Whether, for such a delinquency, an adjudication of suspension may not be necessary it is not material to inquire, because the dues for which this member stood suspended, by operation of the laws of the order, were not dues to the *subordinate lodge*, but were dues to the *supreme lodge*.  We understand that the fund in the possession of a subordinate lodge for the purposes of the lodge, is an entirely distinct fund, governed by entirely distinct rules, from the relief fund, which is controlled by the supreme lodge.  It was for the non-payment of an assessment to this relief fund that the deceased member in this case stood suspended, at the time of his death, by operation of the laws of the order, and the state of his account in respect of the fund of the subordinate lodge is an immaterial inquiry.

In the foregoing recitals of the facts, necessarily long, we have stated that the evidence in various particulars "tended to show" a given state of facts.  We understand that there is no contradiction in the evidence as to the essential facts which determine this case, namely: that assessment number 138, class A, was regularly made by the proper officer of the supreme lodge, this defendant; that the deceased member of Ada lodge, Fred. Borgraefe, was regularly notified of this assessment; that he neglected to pay the same; that he was thereafter regularly notified by mail by the financial secretary of Ada lodge that he must pay his assessment or that he would stand suspended after the lapse of fifteen days, by operation of the laws of the order; that he, nevertheless, did not pay this assessment within fifteen days, nor at

any time prior to his death, which happened about a month later ; that Ada lodge did not advance to the grand lodge, as it had power to do, the money to pay this assessment for Mr. Borgraefe, but that, on the contrary, the financial secretary of Ada lodge notified the supreme lodge of the non-payment of assessment by him, and of his consequent suspension, and that this suspension was never set aside or revoked in conformity with the laws of the order. These facts being undisputed, the plaintiff is not entitled to recover. The spectacle of a widow of a charter member of a lodge of a benevolent order of this kind, herself also a member of it, being deprived of the expected benefit on the death of her husband, in consequence of an attitude which he took, growing out of an unfortunate disagreement between him and other members of the lodge, must, of course, excite a just sympathy. But this sympathy can not be made the basis of making a different contract for the parties from that which they have made for themselves, and of setting aside the rules and regulations which they have agreed upon as the rules and regulations which shall govern in such cases. Her situation may address itself strongly to the benevolent consideration of the members of the order, but it can not influence the decisions of the judicial courts.

As the plaintiff was not entitled to recover upon the undisputed facts above disclosed, it would not serve the purposes of justice to remand the cause for further proceedings. The judgment will be reversed merely. It is so ordered. All the judges concur.

### ON MOTION TO REMAND.

THOMPSON, J., delivered the opinion of the court.

The plaintiff files a motion that the court alter its judgment so as to remand the cause for another trial, and *demands* that this be done, emphasizing the word demand. Every person may rightfully demand justice at the hands of the judicial courts, but where a difference of opinion

exists between court and counsel as to what justice is, it is more dignified and courteous for counsel to couch their motion in less forcible language. The motion proceeds upon the idea that the opinion states that the plaintiff conceded that the second notice or warning which, according to the testimony of the financial secretary of Ada lodge, was sent to the deceased either on the first or second of November, was, in fact, sent. No such expression is found in the opinion. The opinion merely states that the evidence to this effect was uncontradicted. The plaintiff, in moving to have the cause remanded, does not claim that it was directly contradicted, but claims that the fact that Mrs. Borgraefe, the wife of the deceased, testifies that she never saw the second notice, or warning, was a circumstance tending to show that the financial secretary may have been mistaken in supposing that he had sent it. The testimony of Mrs. Borgraefe on this point was that she "found in the cupboard in the house three notices of assessment, issued by the secretary of Ada lodge of defendant, and under its seal, to her husband, mailed to him during October, November, and December, 1884, and calling on him to pay assessments for those months. She never saw any delinquent notice in November, or at any other time. Witness had several young children who are in the habit of going to the door and getting the mail. Witness. "Don't know who put the three above named assessment notices in the cupboard." On the other hand, the financial secretary, with the book before him containing the stub from which he claims to have torn the delinquent notice (which stub the court refused to allow to be read in evidence, but allowed the witness to use it to refresh his memory), testified in the most distinct terms to the fact of having sent the notice. Notwithstanding this, on reflection, we incline to the view that the learned counsel for the plaintiff is correct in the view that the circumstance that Mrs. Borgraefe received the other notices prior and subsequent to the date when the financial secretary claims to have

sent this warning, but did not receive this warning, is a circumstance tending to show that it may not have been sent; since letters committed to the post are ordinarily delivered according to directions, and since, in the ordinary course of things, this warning would have probably found its way to the cupboard, where the other notices were found. We, also, think that the circumstance of the sending, by the recording secretary, of the notice of the December assessment, is another circumstance tending to show that the financial secretary may not, in point of fact, have sent the warning on or about November 1; since, if he had sent it, and marked Borgraefe as suspended on the sixteenth of November, by reason of his disregarding it, and had, on the eighteenth of November, reported the fact of Borgraefe's suspension to the supreme lodge, as he testifies, the subsequent act of the recording secretary in sending Borgraefe notice of the December assessment would have been meaningless. We, also, think, on further reflection, that the act of the recording secretary of the lodge in carrying Borgraefe's name on the rolls of the lodge, even after the date of this alleged suspension, is a circumstance tending to show that the financial secretary may have been mistaken in his testimony as to sending this warning. We rest these views upon the opinion that it is not an unreasonable inference of fact that two officers of a lodge, the financial secretary and the recording secretary, communicate with each other concerning so important a matter as the suspension of a member. The law does not favor forfeitures. The laws of this order, as set out in the opinion of the court, make the fact of the mailing of this second notice, or warning, and its disregard by the member for the space of fifteen days, *ipso facto*, a suspension of the member, whether it was in fact transmitted to him by the servants of the postoffice or not, and, under the rule which works a forfeiture upon proof of the mere fact of mailing, without proof of the fact of delivery, it is a fair conclusion that evidence of the fact of mailing ought to be clear.

In *Lionberger v. Pöhlman* (16 Mo. App. 392, 398), we laid down the following rule, after mature deliberation: "That where the testimony offered in support of the allegations of the party who sustains the burden of proof is, if believed, sufficient to make out his case, and is clear, consistent with itself, delivered by an unimpeached witness, and no circumstance is developed tending to cast suspicion upon it, and no substantial countervailing evidence is offered by the other party, if the jury, nevertheless, disregard it, and return a verdict against it, it will be the duty of the trial court, and of an appellate court on appeal or error, to set it aside as being the result of a manifest mistake." We re-affirm this rule. The multiplication of new trials affording an opportunity to interested parties of amending their swearing to suit the exigencies of their case, is a reproach to our system of remedial justice. We affirm that it is not the duty of an appellate court, where the plaintiff has had his day in court and has failed to present substantial evidence, which, if believed, entitles him to a verdict and judgment as matter of law, or to introduce substantial evidence countervailing an affirmative defence set up by the defendant and clearly proved, to remand the cause in order that perjury may be committed, or that a jury may render a capricious verdict, and the defendant be further vexed by a groundless litigation. But on further reflection we incline to the view that the circumstances above recited, while not casting suspicion upon the good faith of the financial secretary in testifying as he did, are circumstances sufficient to take the question to the jury, whether or not the warning or notice upon which the forfeiture is predicated, was, in fact, sent, or whether the financial secretary might not have been honestly mistaken in supposing that he had sent it.

We, therefore, so modify the judgment of the court as to remand the cause for further proceedings not inconsistent with this opinion. It is so ordered. All the judges concur.