MARY E. KOCHER, DEFENDANT IN ERROR, v. SUPREME COUNCIL CATHOLIC BENEVOLENT LEGION, A CORPO- RATION, &c., PLAINTIFF IN ERROR.

Argued November 28, 1900—Decided March 4, 1901.

1. Where the constitution and by-laws of a mutual beneficial association limit the appointment of its officers and the scope of their powers and duties, and forbid the alteration or amendment of such constitution, except by the governing body in the mode therein provided; and where the members of such association have agreed as part of their contract of membership, to strictly comply with the laws, rules and regulations of the association, the officers thereof have no power to waive the provisions of such by-laws as relate to the substance of the contract between the individual member and his associates in their corporate capacity.

2. In a suit by the wife of a member of such an association who was the beneficiary named in the certificate, to recover the amount of the death benefit named therein, proof of parol declarations of the secretary to the plaintiff, waiving the payment of assessments for death benefits required by the by-laws, until such time as she should find out whether her husband was dead or alive, was admitted in evidence by the trial judge over objection. *Held,* on review, that this was error.

On error to the Supreme Court.

For the plaintiff in error, *Clarence D. Meyer.*

For the defendant in error, *Samuel F. Bigelow.*

The opinion of the court was delivered by

HENDRICKSON, J.   This suit was brought by Mary E. Kocher, the plaintiff below, against the defendant, an incorporated benevolent association located at Brooklyn, N. Y., to recover $1,000 claimed to be due her as the beneficiary named in a benefit certificate dated October 29th, 1894, issued by the association to her husband, George J. Kocher.

He was a member and a second-grade contributor to the benefit fund of St. Brendan Council, No. 446, Catholic Benevolent Legion, located at Newark, N. J., a subordinate council of the defendant association.   And this certificate was issued to said holder upon evidence received that he was a second-grade contributor to the benefit fund of said legion, and upon condition that the statements in his application for membership were true, and that he would strictly comply with the laws, rules and regulations of the legion.

The controversy arises over the ruling of the trial judge at the Essex Circuit in admitting the evidence of the plaintiff to prove alleged parol declarations of the supreme secretary of the defendant, the effect of which was held to be a waiver of the payments of the assessments due the benefit fund as required by the constitution and by the by-laws of the defendant association.

This feature of the proofs arose in this way: The husband disappeared from the city of Newark on August 27th, 1894, and did not return until October 16th, 1896.   He was sick when he returned unexpectedly, and died February 20th, 1897.

He was in good standing up to the day he left, and thereafter his wife, the beneficiary, paid his assessments, which came due on the first and fifteenth of each month, down to February 15th, 1895.   She did not pay the assessment, No.

232, which came due on March 1st succeeding, but the local council advanced that for the member.

A subordinate council was authorized, by the laws of the legion, to authorize the payment of a member's assessment, as a loan or gift, from its general fund, if actually paid in cash to the collector within the time prescribed for payment. The next assessment, No. 233, which fell due on March 15th, 1895, was not paid.

One of the laws of the legion enacted that any member failing to pay a regular assessment on or before the first and fifteenth day of each calendar month, as therein provided, should stand suspended. There was a subsequent provision that a member of the legion who was suspended, applying to be reinstated, must pay the full amount of arrears for dues and fines, all assessments occurring on or before the date of the suspension, and all dues and assessments or other liabilities which would have been charged against him during the period of sixty days after his suspension. A tender was made of the unpaid assessments after the husband returned, which was refused.

In addition, he must also furnish the council a certificate of the medical examiner showing his physical condition and that he is a proper subject for membership. This he did not do.

The learned trial judge seems to have rightly assumed that the suspension followed a default in the payment of the assessment when due, *ex proprio vigore*, without such suspension being evidenced by any act of the local or supreme council; and that, by such suspension, the member forfeits his rights under his benefit certificate. This is the true rule. *Caloir* v. *American Life Insurance and Trust Co.*, 4 *Vroom* 487; *Rood* v. *Railway Passenger, &c., Association*, 31 *Fed. Rep* 62; *Hudson* v. *Knickerbocker Life Insurance Company of New York*, 1 *Stew Eq.* 167.

The by-law of the supreme council, which fixes the dates of payments of the assessments, adds that no further notice shall be necessary. Under such a provision of the by-laws, notice of the non-payment was not necessary to give effect

to the suspension and forfeiture. *Borgraefe* v. *Knights of Honor,* 22 *Mo. App.* 127, 142; *Illinois Masonic Benevolent Society* v. *Baldwin,* 86 *Ill.* 479; *Madeira* v. *Merchants Exchange, &c., Society,* 16 *Fed. Rep.* 749.

The trial judge also charged the jury that, under the proofs, he would have no hesitation in directing a verdict for the defendant but for the plaintiff's evidence of the parol declarations of the supreme secretary above alluded to.

This evidence was admitted over the defendant's objection, and the legality of the ruling is the only question we need consider.

This evidence was to the effect that the plaintiff had received information, in the fall of 1894, which led her to think that her husband was dead, but she could not make the required proof.

She continued paying the assessments until February 13th, 1895, when she paid the assessment that fell due on the fifteenth of that month. She spoke to the collector of the local council as to whether she should continue paying the assessments and dues, and what she should do about it.

Getting no satisfaction from him, she testified that she visited the supreme secretary of the legion, at Brooklyn, on one or two different occasions, and that, in answer to her inquiries, the latter told her not to bother about either assessments or dues until such time as she found out whether her husband was dead or alive, and that, if at any time she found out that he was alive, she could come to them and have him in full benefit by paying back dues and assessments, and that he further told her that the suspension did not amount to anything.

Whether these conversations occurred before or after March 15th, 1895, does not clearly appear. They were somewhere near that date.

But the supreme secretary, when called by the defendant, denied making statements of the character attributed to him, or waiving in any way the payments of assessments when due.

It will be observed that the effect of the judge's ruling was to permit the alleged declarations of the supreme secretary, if

NOVEMBER TERM, 1900. 653

*36 Vroom.*    Kocher v. Supreme Council Cath. Ben. Legion.

proved, to cause the by-laws of the legion to be waived and set aside in the respect mentioned.

In the constitution of the legion it is declared that the constitution of the supreme council and the laws governing the benefit fund shall not be altered or amended except by a three-fourths vote of the members present at a regular meeting of the supreme council, &c.

The powers and duties of the supreme secretary, as defined in the constitution and by-laws, are largely clerical, connected with the meetings of the supreme council, conducting its correspondence, &c., but he is nowhere clothed with power to waive or suspend any of the provisions of the constitution and laws of the legion.

The trial judge seems to have reached the conclusion that this officer had the power to waive the provisions of the by-laws in question, on the ground, as the judge said he thought, that, under the by-laws, such officer was the general manager of the corporation, and that he was the man who represented the corporation. But, supposing he was such general manager, it does not follow, for that reason alone, that he could, under the circumstances of the case, waive the provisions of the constitution and by-laws in question.

It is true that the law of agency applies to officers of corporations, and that if any officer of a corporation is allowed to exercise general authority in respect to the business of the corporation, or a particular branch of it, for a considerable time—or, in other words, if he is held out to the world as having authority in the premises—the corporation is bound by his acts in the same manner as if the authority was expressly granted. 17 *Am. & Eng. Encycl. L.* 135.

But this immunity is extended to those only dealing in good faith with such officers, and who do not know, or are not bound to know, the limitations of their power by the provisions of the company's charter. 17 *Am. & Eng. Encycl. L.* 133, 138; *Adriance* v. *Roome*, 52 *Barb.* 399.

In the present case the plaintiff is not in the attitude of one dealing with the corporation in good faith and without notice. As beneficiary she had no vested interest, even in the

654 · COURT OF ERRORS AND APPEALS.

Kocher v. Supreme Council Cath. Ben. Legion. *65 N. J. L.*

benefit certificate. A by-law authorized the holder of it to change the beneficiary at any time.

She was recognized, perhaps, as an agent of her husband in paying the assessment, and she could occupy a no more favorable position than he in dealing with the corporation.

And he, having been a charter member and former president of the subordinate council, must be held to have been acquainted with the provisions of the constitution and by-laws of the legion. Besides, it is a general principle that persons entering mutual companies are presumed to know the terms of the charter and by-laws under which they are organized. Nor can the officers of such associations dispense with the terms and conditions of such charter and by-laws, unless they are expressly authorized to do so. *Belleville Mutual Insurance Co.* v. *Van Winkle,* 1 *Beas.* 333, 342; *Hale* v. *Mechanics Mutual Insurance Co.,* 6 *Gray* 169; *Brewer* v. *Chelsea Mutual Insurance Co.,* 14 *Id.* 203; *Miller* v. *Hillsborough Fire Association,* 15 *Stew. Eq.* 459; *S. C.,* 17 *Id.* 224.

The officers of a mutual association have no power to waive by-laws relating to the substance of the contract between an individual member and his associates in their corporate capacity. 3 *Am. & Eng. Encycl. L.* (2d ed.) 1069; *Nib. Ben. Soc. & Acc. Ins.* (2d ed.) 195; *Mulrey* v. *Insurance Co.,* 4 *Allen* 116; *Evans* v. *Insurance Co.,* 9 *Id.* 329; *McCoy* v. *Roman Catholic Insurance Co.,* 152 *Mass.* 272; *Lyon* v. *Supreme Assembly,* 153 *Id.* 83.

Again, the constitution is the fundamental law of these benevolent associations, to which all who come within its operation must conform. *Morawetz Corp.* (2d ed.) 494; *Nib., supra,* § 14.

There is a class of cases which may, perhaps, form an exception to the application of the general principles above laid down. And that is where a course of dealing by officers and agents of a corporation, at variance with the strict limitation of duty, has been established by proof of the usage, which has been permitted to grow up in the transaction of its business, and of the acquiescence of its managing officers charged with

the duty to provide and control the company's business.    17 *Am. & Eng. Encycl. L.* 139; *Nib., supra,* 192.

But whether the proof of such usage or apparent authority would be sufficient to justify the evidence of waiver offered in this case, it is unnecessary to decide.

The defendant association had its supreme council, which was its legislative body, and the president of the supreme council was an officer of large powers, but subordinate to the council. It is needless, I think, in this case to go into the powers and duties of the several officers of the legion and endeavor to settle definitely who might be properly said to be the managing officer of the corporation.

For the case is absolutely barren of proof that there was any usage or practice of the association that permitted or sanctioned any previous acts of the supreme secretary or other officers in waiving the payment of assessments or dues from members of the legion under any circumstances.

Isolated instances of forfeiture are insufficient to prove a custom, and cannot be shown to overcome or change the express provisions of the contract of insurance. *Nib., supra,* 536.

There is no proof that the supreme secretary or other officers had ever, on any previous occasions, waived these or any other provisions of the constitution and by-laws of the legion. So that it is impossible to uphold such a radical departure from duty, as alleged, on the part of the supreme secretary, upon the theory of usage or apparent authority.

I think it plain that the refusal to overrule this testimony as to the parol declarations of the supreme secretary was error, and that for this reason the judgment below should be reversed.

*For affirmance*—THE CHIEF JUSTICE, VAN SYCKEL, BO-GERT, KRUEGER.    4.

*For reversal*—THE CHANCELLOR, DIXON, COLLINS, FORT. GARRETSON, HENDRICKSON, ADAMS, VREDENBURGH, VOOR-HEES.    9.