(91 South. 485)

### OVERTON v. SOVEREIGN CAMP, W. O. W. (8 Div. 241.)

(Supreme Court of Alabama. Nov. 3, 1921.)

1. Insurance ⬅➡756(1)—Member held to lose rights and benefits under certificate ipso facto on conviction of murder.

Where the laws of a beneficiary society provide that a conviction of felony forfeits all rights to benefits and nullifies member's certificate, a member loses all rights and benefits under such certificate ipso facto upon his conviction of murder.

2. Insurance ⬅➡755(1)—Member, having lost rights ipso facto upon conviction of murder, was no longer "in good standing," within incontestability by-law.

A member of a fraternal beneficiary society lost all rights and benefits under his certificate under its laws ipso facto upon his conviction of murder, so that he was no longer a member "in good standing," within section of the by-laws providing for incontestability, where the certificate has been in force for five consecutive years immediately preceding the member's death "while in good standing;" for the phrase "in good standing" not only implies that the insured should be a member of the order at the time of his decease, but that he should have a good reputation therein.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good Standing.]

Appeal from Circuit Court, Madison County; Robt. C. Brickell, Judge.

Action by Sallie Normer Overton, against the Sovereign Camp, Woodmen of the World, on a beneficiary certificate issued by the defendant order to plaintiff's husband, D. A. Overton, upon his admission to membership therein, in the year 1905. Judgment for the defendant, and the plaintiff appeals. Affirmed.

By the terms of the certificate the benefit is payable "subject to all the conditions on the back hereof, and subject to all of the. laws, rules and regulations of this fraternity now in force or that may hereafter be enacted, and shall be null and void if said sovereign does not comply with all of said conditions and all of the laws, rules and regulations of the Sovereign Camp of the W. O. W."

One of the conditions referred to is the fourth, which is as follows:

"If the member holding this certificate shall be convicted of a felony, or shall be expelled from the order, * * * or should he die, in consequence of * * * the violation or attempted violation of the laws of the state or of the United States, * * * this certificate shall be null and void, and of no effect, * * * and all rights and benefits which have accrued on account of this certificate, shall be absolutely forfeited without notice or service. This condition is based upon section 66A of the constitution, laws and by-laws of the order of which it is a literal copy."

The same stipulation, condition and declaration of forfeiture is contained in the application for membership in the order.

Section 68 of the constitution, laws, and by-laws of the order is as follows:

"When a beneficiary certificate has been in force for five consecutive years immediately preceding the death, while in good standing of the member holding the same, the payment thereof shall not be contested on any grounds other than that his death was intentionally caused by the beneficiary or beneficiaries, or by the hands of justice or from the direct result of drinking intoxicating liquors, or from the use of opiates, cocaine, chloral, or other narcotics or poison, or shall die while engaged in war, except in defense of the United States of America."

By special plea defendant set up the forfeiture of the policy, by reason of the member's conviction of felony, and by reason of his death while resisting and violating the law. To these pleas plaintiff first demurred, and then set up by way of replication the incontestability clause of the constitution.

Demurrers to the special replication were sustained on the ground that they did not allege that said Overton was a member in good standing at the time of his death. The replications were amended by adding this application:

On the trial it was shown without dispute that Overton from February, 1905, until November, 1916, was continuously a member of

the appellee, and had abided its rules and regulations, and had paid all assessments and dues against him in favor of the society; that he was convicted of murder on November 28, 1916, and sentenced to be hanged; that pending his appeal he escaped from the Jefferson county jail and was slain by the officers while resisting arrest; that after November, 1916, Overton offered to J. W. H. Peeden, clerk of Maple Leaf Camp of appellee, to which Overton belonged and to whom it was his duty to pay his assessments and dues, the amount of said assessments and dues, and that Peeden declined to accept the same; that this offer to pay and refusal to accept were made at or before the time the same were due, and were continuously and repeatedly offered and refused upon each monthly installment which Overton owed; that he died on March 20, 1917; that the appellee had refused to pay the amount due Sallie N. Overton, who was the wife and beneficiary named by D. D. Overton, in said certificate, due thereunder, and that no part of said amount had been paid.

The certificate was introduced in evidence along with the by-laws and constitution of the appellee which were in effect at the time of the death and of the conviction of the said Overton.

The court directed a verdict for the defendant.

R. E. Smith and Charles T. Grimmett, both of Huntsville, for appellant.

It is the merest conclusion to say that Overton was not a member in good standing, or was not a member. 190 Ala. 327, 67 South. 263; 79 South. 450; 78 South. 869; 201 Ala. 141, 77 South. 565; 201 Ala. 290, 78 South. 66. Payment was declined for specific reasons, and hence proof of death was not necessary, nor payment be resisted on any other grounds. 187 Ala. 91, 65 South. 536; 175 Ala. 357, 57 South. 852, Ann. Cas. 1914D, 377; 196 Ala. 425, 72 South. 98. The Sovereign Camp could not, and no officer thereof had the authority to, expel him, but could only direct the local camp what to do. 108 Iowa, 430, 79 N. W. 144, 75 Am. St. Rep. 265; 132 Tenn. 235, 177 S. W. 941, L. R. A. 1915F, 1056, Ann. Cas. 1917A, 376; 7 C. J. 1101; 19 R. C. L. 1241.

Cooper & Cooper, of Huntsville, for appellee.

Brief of counsel did not reach the Reporter.

SOMERVILLE, J. [1] Under section 66a of the laws of the defendant order, any member's conviction of a felony forfeits all rights and benefits under his certificate of membership, and nullifies his certificate, without notice to him. Obviously, the forfeiture and nullification thus declared are effective immediately upon the occurrence of the events or conditions premised, and do not wait upon the trial and expulsion of the member, since there could not be a trial without notice. Moreover, expulsion from the order is one of the alternative grounds of forfeiture, showing quite clearly that the other alternatives are effective by their own force without the sequel of expulsion.

Authority is not needed, but a well-reasoned decision directly in point will be found in Sup. Council Royal Templars v. Curd, 111 Ill. 284, 289, and our own case of United Order Golden Cross v. Hooser, 160 Ala. 334, 342, 343, 49 South. 354, would, by analogy, seem to be decisive.

This rule is recognized also in Carlson v. Sup. Council Am. L. of H., 115 Cal. 466, 47 Pac. 375, 35 L. R. A. 643, with a quotation from Borgraefe v. Sup. Lodge, K. & L. of H., 22 Mo. App. 127, wherein the subject is excellently discussed.

It necessarily follows that the member Overton lost all rights and benefits under his certificate ipso facto upon his conviction of murder, unless the forfeiture was legally waived by the order (and there is no such contention), or unless it is prevented by section 68 of the laws which prescribes the conditions of incontestability.

[2] In order to enjoy the protection of section 68, Overton's certificate must have been in force for five consecutive years immediately preceding his death *while in good standing*; and the decisive question before the court was whether Overton was "in good standing" at the time of his death—a question of law depending upon the meaning to be accorded to that phrase as used in section 68 of the laws. Appellant's contention is that, inasmuch as the laws of the Order provide for the filing of charges against members who are guilty of certain offenses, or who violate the laws of the order, looking to a trial of such members, and resulting contingently in some penalty, or in suspension or expulsion, a member must be regarded as being "in good standing" until the order, acting through some authorized agency, has taken such action and passed such judgment upon the offender as would deprive him of that standing. We think that contention is unsound. To sustain it would be to destroy a clear and precise provision of the laws of the order by an implication which is remote and doubtful at best. The phrase "in good standing," not only implies that the party should be a member of the order at the time of his decease, but that he should have a good reputation therein. The words cannot in reason be so construed as to make a trial and conviction of the offending member a condition precedent to forfeiture.

In the case of Sup. Council Royal Templars v. Curd, 111 Ill. 284, wherein the member's offense was a breach of his pledge of total abstinence, and under a forfeiture clause substantially like the one here shown, the court said:

"The words are to be construed with reference to the language * * * of the certifi-

cate, and when this is done they manifestly mean not only good reputation, but good conduct; that is, freedom from a violation of the pledge of total abstinence," etc.

The violation of the pledge, therefore, and not the expulsion or suspension by reason thereof, is "a cause for forfeiture of rights and benefits under the certificate." See, also, to the same effect, Smith v. Knights of Father Mathew, 36 Mo. App. 184; Puhr v. Grand Lodge, etc., 77 Mo. App. 47, 63; McMurray v. Sup. Lodge, K. of H. (C. C.) 20 Fed. 107.

We hold that under the laws of the order, to which we have referred, Overton's conviction of murder ipso facto deprived him of his standing as a member of the order, and that he was not a member "in good standing" at the time of his death, from which it results that the payment of the benefit was contestable, notwithstanding section 68 of the laws.

The rulings of the trial court on the pleadings, and in the giving of the affirmative charge for defendant, are in harmony with the foregoing views and conclusions, and the judgment will therefore be affirmed.

Affirmed.

McCLELLAN, THOMAS, and MILLER, JJ., concur.