[S. F. No. 476. Department One.—December 31, 1896.]

MARY CARLSON, APPELLANT, v. SUPREME COUN-
CIL AMERICAN LEGION OF HONOR, RESPOND-
ENT.

MUTUAL BENEFIT SOCIETIES—NONPAYMENT OF ASSESSMENTS—SUSPENSION
OF MEMBERSHIP—RIGHT OF REINSTATEMENT—DEATH DURING DELIN-
QUENCY—FORFEITURE OF BENEFITS.—Where, under the rules govern-
ing a mutual benefit society, one of its members was bound without
notice to pay all assessments levied against him during each calendar
month, on or before the last day of the month, under penalty of sus-
pension of membership and forfeiture of his beneficial certificate, such
suspension and forfeiture take place, at once, by operation of law,
upon such failure, without any notice or action of the society being
necessary to their consummation; and a provision in the rules that
the member may be reinstated within sixty days, upon payment of
all dues and assessments, gives him only a personal option to defeat
or annul the forfeiture, of which he may avail himself during the
sixty days if he lives, but, if he dies during the delinquency before
the end of the sixty days, the forfeiture of benefits is absolute, and the
beneficiary cannot, by tendering payment thereafter, within the time
limited, acquire a right to recover upon the benefit certificate.

ID.—WAIVER OF DEFAULT—NOTICE OF SUBSEQUENT ASSESSMENTS—CONDI-
TIONS OF REINSTATEMENT.—The general rule that an insurance com-
pany, by entering into negotiations with the insured, after knowledge
of a default for which it might terminate the insurance, so as to rec-
ognize the continuous validity of the policy, waives the right to claim
a forfeiture for the previous default, does not apply to a case where
the insured is a suspended member of a mutual benefit association,
by reason of a default in payment of assessments, having a right to
reinstatement to benefits upon paying all prior and subsequent assess-
ments within a limited time, and when the company must continue to
levy assessments and impart needed information to the insured, to en-
able him to exercise his right of reinstatement; but, in such case, the
making and giving of notice of subsequent assessments, which he is re-
quired to pay before he can be reinstated, do not in any manner waive
the previous default, but are consistent with the duty of the society
toward him until he has been in arrears for the time stipulated in
which he may be reinstated.

APPEAL from a judgment of the Superior Court of Ala-
meda County. A. L. FRICK, Judge.

The facts are stated in the opinion.

G. W. Langan, for Appellant.

As no forfeiture could have been declared during Carl-
son's life, and within the sixty days' grace, he died with

a contractual right, which passed to his legal representative. (*Moore* v. *Order Ry. Conductors*, 90 Iowa, 721; *Dennis* v. *Massachusetts etc. Assn.*, 47 Hun, 338; 120 N. Y. 496; 17 Am. St. Rep. 660; *Wheeler* v. *Connecticut etc. Ins. Co.*, 82 N. Y. 543; 37 Am. Rep. 594; Bacon on Benefit Societies, sec. 385; *Olmstead* v. *Farmers' etc. Ins. Co.*, 50 Mich. 200.) The personal representative could execute all that the deceased could have done, as the only act required of Carlson during the sixty days was the payment of the arrears. (Civ. Code, sec. 1559; Code Civ. Proc., sec. 1582; *McCann* v. *Pennie*, 100 Cal. 551; *Janin* v. *Browne*, 59 Cal. 44.) The provision of the by-laws, extending the time of payment for sixty days after suspension, is a waiver of the right of defendant to declare a forfeiture within that period. (*Michigan etc. Ins. Co.* v. *Custer*, 128 Ind. 25; *Insurance Co.* v. *Norton*, 96 U. S. 234; *Moore* v. *Order Ry. Co.*, *supra*.) Failure to pay at the time of maturity did not *ipso facto* make the contract void, and an option to avoid it must be expressed by proper notice. (*Alexander* v. *Jackson*, 92 Cal. 514; 27 Am. St. Rep. 158; *Armstrong* v. *Pierson*, 5 Iowa, 317; *Wells, Fargo & Co.* v. *Pacific Ins. Co.*, 44 Cal. 397.) If the conditions of this contract involve a forfeiture it should be strictly interpreted against the defendant, for whose benefit the forfeiture is created. (Civ. Code, sec. 1442; *McDonald* v. *Chosen Friends*, 78 Cal. 56; *Alexander* v. *Jackson*, *supra*; *Sauer* v. *Meyer*, 87 Cal. 37; *People* v. *Perry*, 79 Cal. 112.) Forfeitures are never enforced if couched in ambiguous terms. (*Cleary* v. *Folger*, 83 Cal. 321; 18 Am. St. Rep. 187; *Holly* v. *Metropolitan etc. Ins. Co.*, 105 N. Y. 437; *Loughridge* v. *Iowa etc. Assn.*, 84 Iowa, 141; *Appleton* v. *Phœnix etc. Ins. Co.*, 59 N. H. 541; 47 Am. Rep. 220; *Lantz* v. *Vermont etc. Ins. Co.*, 139 Pa. St. 546; *Sweetzer* v. *Odd Fellows etc. Assn.*, 117 Ind. 97.) A society may establish a custom by sending notices of assessment. (Bacon on Benefit Societies, sec. 379; *Insurance Co.* v. *Eggleston*, 96 U. S. 572; *Alexander* v. *Continental Ins. Co.*, 67 Wis. 422; 58 Am. Rep. 869.) When the company, by its agent, had induced the insured to believe that no

forfeiture would be incurred for nonpayment of money
until a personal notice to make payment was served, no
rights are lost unless notice is given, notwithstanding
the policy did not require notice to be given, and pay-
ments became due at fixed periods.    (*Alexander* v. *Con-
tinental Ins. Co.*, *supra;* Niblack on Benefit Societies,
sec. 257.)    The forfeiture, if any, for nonpayment of
November assessments was waived by recognizing and
negotiating with Carlson as a member in December.
(*Farmers' etc. Assn.* v. *Koontz*, 4 Ind. App. 538; *Odd Fel-
lows etc. Assn.* v. *Sweetzer*, *supra; Murray* v. *Home etc.
Assn.*, 90 Cal. 407; 25 Am. St. Rep. 133; *Modern Wood-
men* v. *Jameson*, 49 Kan. 677; *Bankers' etc. Assn.* v.
*Stapp*, 77 Tex. 517; 19 Am. St. Rep. 772; *Elmer* v. *Mu-
tual etc. Assn.*, 19 N. Y. Supp. 289; *Phœnix Ins. Co.*
v. *Tomlinson*, 125 Ind. 84; 21 Am. St. Rep. 203;
*Jackson* v. *North Western etc. Assn.*, 78 Wis. 463.)
When the notice demands payment of more money
than is due, nonpayment within the time will not con-
stitute a forfeiture.    (*Eddy* v. *Phœnix etc. Co.*, 65 N. H.
27; 23 Am. St. Rep. 17; *United States etc. Assn.* v.
*Mueller*, 151 Ill. 254; *Mutual Endowment etc. Assn.* v.
*Essender*, 59 Md. 463; Niblack on Benefit Societies, sec.
268.)    The December notice was insufficient because
it demanded payment on December 30th, when the
assessment was not due until December 31st.    (Bacon
on Benefit Societies, sec. 380; *United States etc. Assn.*
v. *Mueller*, *supra; Eddy* v. *Phœnix L. Ins. Co.*, *supra;
Mutual Endowment Assn.* v. *Essinger*, *supra;* Niblack on
Benefit Societies, secs. 268, 504.)    A man's name may
be restored to the list of membership after he is dead.
(*Connelly* v. *Masonic etc. Assn.*, 58 Conn. 552; 18 Am.
St. Rep. 296; *Dennis* v. *Massachusetts etc. Assn.*, *supra.*)

*Walter D. Mansfield*, for Respondent.

If a member does not pay his assessment within
thirty days he loses his membership and his policy
becomes void.    (*Dennis* v. *Massachusetts etc. Assn.*, 120
N. Y. 496; 17 Am. St. Rep. 660; Niblack on Benefit

Societies, 2d ed., secs. 248, 285, 290; Bacon on Benefit Societies, secs. 104, 385; *Rood* v. *Railway etc. Assn.*, 31 Fed. Rep. 62.) The beneficiary cannot pay after the member's death while in bad standing and suspended. (Niblack on Benefit Societies, 545; *Modern Woodmen* v. *Jameson*, 49 Kan. 677.) Defendant did not waive the suspension for failure to pay November assessments by giving notice of December assessments. (Bacon on Benefit Societies, secs. 420–35; *Mutual etc. Ins. Co.* v. *Laury*, 84 Pa. St. 43; *Borgraefe* v. *Supreme Lodge*, 22 Mo. App. 127.)

SEARLS, C.—Mary Carlson, the appellant, brings this action to recover from the defendant (the Supreme Council American Legion of Honor, a corporation organized under the laws of the state of Massachusetts, and doing business in the state of California) the sum of two thousand dollars upon a benefit certificate issued August 5, 1892, to Edward Carlson, the husband of plaintiff, reciting him to be a member of a subordinate council of defendant, know as Livermore Council, No. 1070.

The cause was submitted to the court upon an agreed statement of facts, and judgment was entered in favor of defendant. From this judgment plaintiff appeals, and the case comes up on the judgment-roll.

The certificate No. 165,746, issued to Edward Carlson, recites that he is a companion of the American Legion of Honor, has applied for three degree membership to Livermore Council, No. 1070, American Legion of Honor, instituted and located at Livermore, in the state of California, and passed the requisite medical examination, and has been duly initiated in said council, etc. It then proceeds to recite that the certificate is issued as evidence of the facts in it contained, and as a statement of the contract existing between the companion and the Supreme Council American Legion of Honor, which contract, so far as important here, is as follows:

" In consideration of the full compliance with all the

by-laws of the Supreme Council, A. L. of H., now existing, or hereafter adopted, and the conditions herein contained, the Supreme Council, A. L. of H., hereby agrees to pay Mary Carlson, wife, $2,000 (two thousand dollars) upon satisfactory proof of the death, while in good standing upon the books of the supreme council, of the companion herein named, and a full receipt and surrender of this certificate, subject, however, to the conditions, restrictions, and limitations following:

" Second.    That said companion shall have paid all assessments called to the benefit fund within the time and in the manner required by the by-laws of the supreme council in force at the time of the issuance of this certificate, or as the same may be hereafter amended.

" Fifth.    That this benefit certificate is issued by the supreme council and accepted by the companion herein named, for himself and his beneficiary, upon the express condition and agreement that in case of any false or fraudulent statement, or misrepresentation or violation of any covenants herein contained, the same shall be void."

The certificate is under the seal of the supreme council and is duly signed by the supreme commander and supreme secretary under date of August 5, 1892.

The objects of defendant, as provided in its certificate of incorporation, are, among other things: " To establish a benefit fund from which, on satisfactory evidence of the death of a member of the order who has complied with all its lawful requirements, a sum not exceeding five thousand dollars shall be paid to the family, orphans, or dependents as the member may direct." The by-laws of defendant, or a portion of them, are set out in the agreed statement.    We state the substance of such of them as are deemed necessary.

Defendant has a *benefit fund* from which death and relief benefits are paid.    This fund is recruited by assessments levied upon the members of subordinate councils.    All assessments and dues to subordinate councils are collected by collectors, who are officers of

the subordinate councils, but are appointed by the supreme commander of defendant, and are amenable to the supreme council.

It is the duty of the collector to receive from members all assessments due the supreme council, and on or before the 10th of each month to remit to the supreme treasurer all assessments paid him during the previous month; also, to remit all payments made by members for reinstatement, and to report to his subordinate council. He also has certain duties to perform in relation to collecting dues of the subordinate council, which do not go to defendant, but are for the maintenance of such subordinate body.

Assessments: Assessments are divided into two groups, viz: 1. Those due for two years after admission, etc. 2. Those becoming due thereafter.

As to the first class: Applicants of the age of Edward Carlson, when he became a member, were and are required to pay at admission to the collector one assessment of eighty cents, and upon a benefit certificate of two thousand dollars for twenty-four months thereafter one like assessment of eighty cents on the first day of each month, and an additional one of like amount on the fifteenth day of each alternate month during said period of twenty-four months, "and any member failing to pay the assessments so required of him on or before the day limited for the payment of the same shall stand suspended from the order, and all his rights and benefits therein, and his or her certificate shall be void.

As to the second group of assessments: Defendant has an executive committee whose duty it is, on the first of each month, to determine how many assessments will be needed to pay debts already accrued, and which may be anticipated for the month.

Notice thereof is to be given to each council and to each collector, "and for each succeeding month after the expiration of said twenty-four months such member shall, on or before the last day of each calendar month, pay to the collector of his council, and without notice,

all assessments which may have been called by the executive committee and are payable by him during said month, and in default thereof, he shall stand suspended from membership in the order, and all benefits therein and his benefit certificate shall be void."

A suspended member may be reinstated within sixty days after suspension by paying to the collector the full amount of arrears for dues, fines, and all assessments called on or before the date of reinstatement. Failing to do so, he must make written application for reinstatement and be re-examined and furnish a favorable certificate from the medical examiner, etc., etc. Members can only be reinstated as above, and any reinstatement' of a suspended member by any council in any other manner is void.

The by-laws of defendant and the by-laws of the subordinate council do not require collectors to notify members as to the payment of assessments or quarterly dues, except that a by-law of the latter requires such collector to notify members thereof when their quarterly dues are three months in arrears. These last-named dues are one dollar per quarter, payable quarterly in advance, on the first day of January, April, July and October.

The collector of Livermore Council was in the habit of giving to all the members of said council written notice each month of the assessments levied by the defendant against them. These notices were given without the knowledge or direction of defendant.

We may summarize the agreed statement by saying that from the date of Edward Carlson's admission to the order, viz., from July 20, 1892, to November 1, 1894, a large number of assessments were levied against him, some of which were paid when due, but on four occasions, at least, he failed to pay such assessments when due, and was suspended on the books of Livermore Council and on the books of defendant. In each instance he paid such assessments within sixty days, as provided by the by-laws, and was reinstated. On the 1st of November, 1894, assessments Nos. 319, 320, and

321, of eighty cents each, were duly levied by defendant, and were due and payable by said Carlson on or before November 30, 1894.

Carlson was notified in writing by the collector as follows, which notice he received by mail:

"LIVERMORE COUNCIL, No. 1,070, A. L. OF H.
"LIVERMORE, CAL., Nov. 1, 1894.
"To Ed. Carlson:

"COMPANION: You are hereby notified that assessments Nos. 319, 320, and 321, amounting to $2.40, having been called under this date, must be paid to the collector on or before November 30, 1894.

"Due on account of dues to December 31, 1894, $1.
"A. G. BEAZELL, Collector."

These three assessments were never paid, and ever since the last day of November, 1894, said Edward Carlson stood, and now stands, on the books of Livermore Council, and on the books of defendant, suspended from membership, and has not since been in good standing on the books of defendant.

On the first day of December, 1894, three additional assessments were levied, of which, on said date, Carlson was notified in writing as above, except as to dates. This last notice specified that the assessments must be paid "on or before December 30, 1894." These assessments were never paid.

The quarterly dues of one dollar specified in both the notices of November and December were paid by Carlson to one Lenhart, but were not paid by him to the collector until after the notices had been sent. Edward Carlson died January 4, 1895.

On the twenty-fourth day of January, 1895, the plaintiff herein, the beneficiary named in the certificate issued to said Carlson, caused the sum of four dollars and eighty cents, the full amount of assessments due from said Carlson, to be tendered to the collector of Livermore Council, together with proofs of death, and demanded payment of the sum of two thousand dollars named in the certificate issued to said Carlson. The collector

refused to accept the sum tendered, giving as a reason therefor, "that said Edward Carlson was then dead, and that a dead man could not be reinstated."

From the foregoing statement it will be observed that Edward Carlson was suspended December 1, 1894, and died during such suspension January 4, 1895, or within the period of sixty days, during which, under the by-laws of defendant, he was entitled to reinstatement, whether in sickness or health, by simply paying all arrearages assessed against him up to the date of such payment.

Under the certificate which was issued by defendant to Edward Carlson, there were certain conditions made a predicate to the payment of the sum of two thousand dollars to the beneficiary therein named. The first of these conditions is, that said sum shall be paid "upon satisfactory proof of the death [of Carlson], while in good standing upon the books of the Supreme Council."

The second predicate is, that the companion shall have paid all assessments called to the benefit fund within the time and in the manner required by the by-laws then in force or thereafter adopted, and it is further provided, that upon a violation of any of the covenants therein contained, the same shall be void.

One of the by-laws in force and referred to in the certificate required the member to pay to the collector on or before the last day of the month, and without notice, all assessments called for by the executive committee and payable by him during said month, "and in default thereof he shall stand suspended from membership in the order, and all benefits therein, and his benefit certificate shall be void."

Under this rule the nonpayment of assessments as specified *ipso facto* operated as a suspension, and no action was necessary on the part of the grand or subordinate council to emphasize or effectuate the suspension, or to render the certificate void.

The contention of appellant is that the contract does not provide for a forfeiture, until the expiration of the

sixty days' grace afforded him within which to become reinstated by payment of assessments; that an agreement that a contract shall be void in default of payment at a given time, attended by a further agreement that the rights of a party thereto may be saved by payment within sixty days thereafter, is repugnant to and inconsistent with the idea of forfeiture before the expiration of the sixty days; that forfeiture implies a determination of the contract, and, if complete, reinstatement would necessitate a new contract and a new consideration, and that, as there was no new contract or new consideration provided in the case at bar, the reinstatement is evidence of the existence of the original contract; that no forfeiture could have been declared within the sixty days, and hence, as he died within that period, his right passed to his representative.

In mutual benefit societies provision is almost invariably made in the charter, by-laws, or certificates of membership for assessments upon members for the payment of death losses, and for forfeiture of all rights of membership, in case assessments are not paid in accordance with the rules and regulations.

Such societies have no practical means of meeting their frequently recurring obligations, except by the prompt collection of such assessments, and it has been found necessary to adopt stringent means to enforce their prompt payment. Forfeitures are not favored in law, but they will be enforced for a breach of the condition agreed upon, when such condition is clearly set out and the intention of the parties is made manifest.

If, by the contract, previous notice is a necessary precedent to the forfeiture, such notice must be shown to have been given before the forfeiture can occur. If the forfeiture is to take place within a specified time after notice, both the notice and the lapse of the time specified thereafter, during the life of the insured, must be shown.

If, in addition to the foregoing requisites, some action by the society is essential to crystalize the forfeiture,

such action becomes an added requisite, and, like the others, must have been taken during the life of the insured to perfect the forfeiture. In other words, the forfeiture must have taken place during the life of the insured. The reason of this is that the contract of life insurance, in the absence of express stipulations to the contrary, becomes complete at the death of the insured.

The liability or nonliability of the insurer becomes fixed by that event. The corollary right of the plaintiff, as beneficiary of Edward Carlson, to recover, depends equally (in the absence of some question of waiver or estoppel) upon the conditions existing at the moment of Carlson's death.

The case then stands thus: Under his contract Edward Carlson was bound without notice to pay on or before the last day of each calendar month, to the collector of the subordinate council of which he was a member, all assessments levied against him for the current month under the penalty of a forfeiture of his beneficial certificate for failure so to do. The forfeiture took place *eo instanti*, by operation of law. No notice or action by the society was necessary to its consummation. He failed to pay his assessments for November, 1894, and on December 1st was suspended upon the books of the subordinate and supreme council.

There was, however, a condition subsequent, contained in the by-laws of defendant, and made a part of the agreement, and in support of which his payment of assessments was a sufficient consideration, viz., that by the payment, within sixty days after forfeiture, of the previous assessments and such others as had accrued in the interim, he could defeat and annul the forfeiture. This was an option of which he might avail himself. He failed to do so, and died within the sixty days. Could his beneficiary avail herself of this privilege within that period? Bacon, in his work on Benefit Societies and Life Insurance, at section 385 *b*, lays down the rule as follows: "If a member neglects to become reinstated during his lifetime, he cannot be reinstated

after his death, though the period in which he might be reinstated if living has not expired."

"Where a member had been suspended for nonpayment of assessments, and he had neglected, during his lifetime, to secure his reinstatement in accordance with the terms of his certificate, by paying arrearages while in good health and within a certain time, his restoration to membership cannot be effected after his death by payment by another person, within the time limited, of the sum due from him at the time of his death." (Niblack on Benefit Societies, sec. 292.)

Counsel for appellant contends that the foregoing quotations are founded, not upon principle, but upon the *syllabus* in *Modern Woodmen* v. *Jameson*, 49 Kan. 677, and that such *syllabus* is misleading in not stating certain factors present there and not involved here. A rehearing was granted in that case, and the court finally held that the member *had not in fact* been suspended.

We have quoted from Bacon and Niblack, not because the quotations are based upon *Modern Woodmen* v. *Jameson*, supra, but because we regard their statements as being founded in elementary principle.

Judge Seymour D. Thompson, an accredited authority on the subject of corporations, in *Borgraefe* v. *Knights of Honor*, 22 Mo. App. 127, held the following language:

"It was argued in behalf of the plaintiff at the bar that there was no forfeiture in this case, because the declaration of a forfeiture is a judicial act, and neither Ada Lodge nor any other judicatory having the power to declare a forfeiture had so adjudged. This contention has no foundation in view of the fact that under the provision of section 3, of law 2, above quoted, it is not necessary that the lodge, or any other judicatory of the order, should adjudge a forfeiture against a delinquent member for nonpayment of an assessment for a death benefit, but that, on the contrary, the suspension attaches by operation of law.

"There is, in view of this provision, a plain distinction between this case and cases which have arisen

under the constating instruments of mutual insurance companies, and other benevolent orders of this character, where the governing statute recites that for the nonpayment of dues, or other named delinquency, the member *may* be suspended by the lodge or other judicatory.

"Here the member is not suspended until the lodge or other designated judicatory exercises the power of suspension. (*Olmstead* v. *Farmers' Mut. etc. Ins. Co.,* 50 Mich. 200.) The reason is, that whatever right the lodge or the order may have against the member for an infraction of its rules, must be sought in conformity with the laws and rules of the order. The remedy therein prescribed must be exhausted before resort can be had to the judicial courts. (*Chamberlain* v. *Lincoln,* 129 Mass. 70.)

"But where, as in this case, the suspension attaches by operation of law upon an event named, and the member dies before the suspension has been set aside in conformity with the rules of the order, there can be no recovery upon his benefit certificate."

This view seems to be sustained by the authorities. (*Illinois etc. Soc.* v. *Baldwin,* 86 Ill. 479; *Rood* v. *Railway etc. Assn.,* 31 Fed. Rep. 62; *Madeira* v. *Merchants' etc. Soc.,* 16 Fed. Rep. 749; *McDonald* v. *Ross-Lewin,* 29 Hun, 87; *Blanchard* v. *Atlantic Mut. Life Ins. Co.,* 33 N. H. 9; *American etc. Soc.* v. *Helburn,* 85 Ky. 1; 7 Am. St. Rep. 571; *Brown* v. *Grand Council, etc.,* 81 Iowa, 400; *Holland* v. *Supreme Council,* 54 N. J. L. 490.)

It is expressly stipulated by the parties herein that all the assessments specified were duly, regularly, and properly levied and called and were payable to defendant by Carlson on or before November 30, 1894, as to the November assessments; and on or before December 31, 1894, as to the December assessments; "and no question is raised or arises herein as to the calling, legality, etc.," of said assessments, and the duty of Carlson to pay each and all of them.

" 2. That since November 30, 1894, Carlson stood and

now stands upon the books of Livermore Council . . . and the defendant suspended from membership. . . . . and is not now and has not been since said last day of November, 1894, in good standing upon the books of this defendant."

"Good standing upon the books of the supreme council" at the date of death, and payment of all assessments called for the benefit fund within the time and in the manner required by the by-laws, were the conditions of Carlson's agreement. Not having complied with these conditions, his beneficiary cannot recover unless defendant has waived the forfeiture or has performed some act or omitted to perform some act whereby an *estoppel* can be invoked against it.

Appellant contends: 1. That the levy and notice of the December assessments was a waiver of any forfeiture to which defendant was entitled by nonpayment of the November assessment; 2. That in case of each of the assessments a larger sum was demanded than was due; 3. That notice of the December assessment was void, because it called for payment December 30th instead of December 31st. It is a general rule that if an insurance company, after knowledge of any default for which it might terminate the contract of insurance, enters into negotiations or transactions with the assured, which recognizes the continual validity of the policy and treats it as still in force, the right to claim a forfeiture for such previous default is waived. (*Murray* v. *Home etc. Assn.*, 90 Cal. 402; 25 Am. St. Rep. 133, and cases there cited.)

That rule has no application, however, to a case like the present, where the insured has a right to reinstatement, within sixty days after forfeiture, upon paying the amount due and all accruing assessments subsequent to the default and prior to reinstatement. Manifestly the company in such a case must continue to levy the assessments, and to give notice thereof is but to impart needed information to the insured, to the end that he may exercise his right of reinstatement.

Niblack, after discussing the question of waiver, states the rule in cases like the present as follows: "When a delinquent member has a right to reinstatement to benefits under his contract of insurance, either with or without conditions, the making of subsequent assessments which he is required to pay before he can be reinstated, and the giving him notice thereof, do not in any manner waive his first default, but are entirely consistent with the duty of the society toward him until he has been in arrears for the time stipulated within which he may be reinstated." (Citing *Leffingwel* v. *Grand Lodge*, 86 Iowa, 279; *Baumgart* v. *Modern Woodmen*, 85 Wis. 546; *Stiepel* v. *Association*, 55 Mo. App. 224; Niblack on Benefit Societies, sec. 306, p. 585; *Crawford County Mutual Ins. Co.* v. *Cochran*, 88 Pa. St 230; *Lantz* v. *Vermont etc. Ins. Co.*, 139 Pa. St. 546; *Lyon* v. *Supreme Assembly*, 153 Mass. 83; *Mutual Protection etc. Ins. Co.* v. *Laury*, 84 Pa. St. 43.)

There is a class of cases in which notices were given by the insurers, calculated to mislead the insured, of which such cases as *Moore* v. *Order of Railway Conductors*, 90 Iowa, 721; *Murray* v. *Home etc. Assn.*, supra, are samples. But the case at bar is clearly distinguishable from those of that class.

The sum of one dollar included in the November notice of dues to the local council was proper. The quarterly dues were payable in advance on the first meeting in October, etc., and, although not delinquent until the end of the quarter, it was due and payable from the beginning of the quarter.

True, Carlson had paid it to one Lenhart, but, as he failed to pay it over to the collector, and is not shown to have sustained any relations to the council, official or otherwise, this could not avail to the benefit of Carlson.

Carlson was, however, suspended for the nonpayment of the November assessments by the grand body, which had nothing whatever to do with the dues of the local council, hence we are not concerned with the latter. We need not consider the question of the December as-

sessments, as Carlson's default was perfect on the November assessments.

We recommend that the judgment be affirmed.

HAYNES, C., and BRITT, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

HARRISON, J., VAN FLEET, J., McFARLAND, J.