# SUPREME COMMANDERY OF THE UNITED ORDER OF THE GOLDEN CROSS OF THE WORLD v. BERNARD.*

FRATERNAL LIFE INSURANCE; FRATERNAL BENEFICIAL ASSOCIATIONS; INSURANCE; FORFEITURE; REINSTATEMENT; WAIVER.

1. Where upon the death of his wife, the beneficiary named in a certificate of fraternal life insurance, the insured directed the issuance of a new certificate to his wife's executor as beneficiary, and the association neglected to issue such new certificate, and after the death of the insured his executors procured an assignment from the executor and next of kin of the wife, such executors may maintain a suit on the benefit certificate against the association. (Following *Berkeley v. Harper*, 3 App. D. C. 308.)

2. Where the by-laws of a fraternal beneficial association provide that forfeiture and disconnection of a member will result from the non-payment of an assessment, and also that a disconnected member may be reinstated by payment by him, within thirty days, of his arrearages and such fine as may be provided for by the by-laws, the right of reinstatement is personal to the member, and does not survive to his personal representatives or beneficiaries; and if the member dies after his disconnection, and within such period of thirty days, there can be no recovery on the benefit certificate.

3. Where the waiver of the payment, within the required time, of a premium or assessment, relied on by the plaintiff in an action against an insurance company on a policy or certificate of insurance, was the

---

*Insurance — Change of Beneficiary.* The authorities dealing with the subject of changing the beneficiary by a method otherwise than that prescribed by the policy or by-laws are presented in an editorial note to *Grand Lodge A. O. U. W.* v. *Noll*, 15 L. R. A. 350.

*Reinstatement.*—As to reinstatement of defaulted policy by payment of premium after death of insured, see the authorities presented in an editorial note to *Wright* v. *Supreme Commandery K. of G. R.* 14 L. R. A. 283.

act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent.

4. Where the by-laws of a fraternal benefit association provide for the forfeiture of a benefit and disconnection of the member on failure to pay an assessment, and for reinstatement upon payment of the same within thirty days, the receipt by the company of overdue assessments paid within the thirty days is not evidence of a waiver of the disconnection; nor is a failure on the part of the collecting officer or other agent of a local order of the association, though acting as agent for the parent order, to notify the latter of the disconnection of the member, where that disconnection has been overcome by the payment of the overdue assessment.

No. 1594.   Submitted October 11, 1905.   Decided November 8, 1905.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia upon a verdict of a jury, in an action against a fraternal benefit association upon a benefit certificate issued by it.          *Reversed.*

The COURT in the opinion stated the case as follows:

This appeal is by the defendant, the Supreme Commandery of the United Order of the Golden Cross of the World from a verdict against it by a jury in a suit at law on a benefit certificate issued by it to Joseph Trainor, a member of Halcyon Commandery, a local lodge of the appellant, made payable on its face to Catharine W. Trainor, his wife, and now claimed by the appellees, Richard and Alfred D. Bernard, as his executors, who are also the assignees of the executor and of the next of kin of Catharine W. Trainor.

One of the objects of the order, as disclosed by the record, was to establish a benefit fund from which an agreed sum was to be paid on the death of a beneficiary member of the order who had complied with all the lawful requirements, to the beneficiary's family, or to be disposed of as such beneficiary might direct.   The certificate was issued in January, 1890, and all of the monthly assessments were paid by the beneficiary down

to the one due November 1, 1902, which was payable within thirty days thereafter. Trainor, failing to make this payment, became disconnected from the order, but with the right to reinstatement within thirty days after such disconnection by the simple payment of the assessment and such fine as the commandery might by by-laws provide. Before such payment, and on December 2, 1902, Trainor died. His executors, on December 19, 1902, tendered the proper officer the sum of $6.60, the amount due for the November and December assessments, but appellant's officer refused to receive the same.

The record further discloses that Trainor's wife, the beneficiary named in the original certificate, died some time prior to the 13th day of November, 1900, and that Trainor surrendered the benefit certificate and directed that a new certificate be issued to him, naming as beneficiary his late wife's brother, J. Marion Duncan, who was stated to be the executor of his last will and testament. The appellant neglected or refused to comply with Trainor's request, and no change was made in the certificate. It appears, however, that Trainor, in February, 1901, duly executed a will, which was, after his death, duly admitted to probate, wherein he named the appellees as his executors. Trainor also left a letter of instructions to his executors directing them what disposition to make of the proceeds of the benefit certificate in question. The executor of his wife's will duly assigned any right that he might have as such executor in the said benefit certificate, and an assignment of a like interest was made by the next of kin of said deceased wife in and to the proceeds of said benefit certificate.

To the amended declaration a demurrer was filed, and, being overruled, exception was noted and six pleas interposed, to which issue was joined.

Upon the trial of the case, the facts above set forth were shown, and, in addition thereto, it appeared from the testimony of James S. Sharpe, who testified that he was a member of Halcyon Commandery, of Washington, D. C., and the United Order of the Golden Cross, that one W. S. Stetson was the keeper of records of Halcyon Commandery at the time of

Joseph Trainor's death, and that he was then dead. He identified the signature of Stetson on the benefit certificate; also on the reverse side in the alleged application for change of beneficiary, and a letter dated December 19, 1902, written to the plaintiffs.

It also appeared from his testimony that Trainor frequently failed to pay his assessments until after he was disconnected, and that he never made formal application for reinstatement or passed a medical examination, these not being required by the by-laws, but he was reinstated by simply paying the assessment. At the close of the testimony, the court submitted the case to the jury, having refused defendant's prayers and granted those submitted by plaintiffs. The jury returned a verdict for the amount of the certificate less the November and December assessments.

*Mr. Andrew Wilson* and *Mr. Noel W. Barksdale* for the appellant.

*Mr. I. Q. H. Alward* and *Mr. Richard Bernard*, for the appellees:

1. Officers of the local lodges are the agents of the supreme commandery, and any acts incident to their duties as local officers are binding on the supreme commandery. *Prudent Patricians* v. *Marr*, 20 App. D. C. 363; *Lodge* v. *Withers*, 177 U. S. 260; *Beil* v. *The Lodge*, 80 App. Div. 609; *Gaige* v. *The Lodge*, 48 Hun, 137; *Modern Woodman* v. *Coleman*, 89 N. W. 461.

2. Joseph Trainor had the right to designate beneficiaries under the policy in question. *Berkley* v. *Harper*, 3 App. D. C. 308. The principles laid down in *Berkley* v. *Harper*, *supra*, have been elsewhere announced in various well-considered cases. See *Massey* v. *Mutual Relief Soc.* 102 N. Y. 523; *Beatty's Appeal*, 122 Pa. 428; *Gentry* v. *Lodge*, 23 Fed. 718; *Relief Asso.* v. *McAuly*, 2 Mackey, 70; *Lamont* v. *Grand Lodge*, 31 Fed. 177; *Lamont* v. *Hotel Men's Mut. Ben. Asso.* 30 Fed. 817; *Supreme*

*Conclave* v. *Cappella,* 41 Fed. 1; *Grand Lodge* v. *Child* (Mich.) 38 N. W. 1.

3. The death of Joseph Trainor on the 2d of December without having paid the assessment levied on the 1st of November did not work a forfeiture of the policy. *Modern Woodmen* v. *Lane,* 62 Neb. 97; *Littleton* v. *Wells & McC. Council,* 98 Md. 464; *Knickerbocker Ins. Co.* v. *Norton,* 96 U. S. 234; *Phœnix Mut. Ins. Co.* v. *Doster,* 106 U. S. 30; *Hartford Life & Annuity Co.* v. *Unsell,* 144 U. S. 439; *Lodge* v. *Hammerl,* 94 Ill. App. 164; *Murray* v. *Home Ben. Asso.* 90 Cal. 402; *Moore* v. *The Lodge,* 90 Iowa, 721; Bacon, Ben. Soc. § 433.

4. If there is ambiguity or conflict in the different sections of the laws of the order, that construction must prevail which is most favorable to the assured and will tend to defeat a forfeiture. *Connelly* v. *Shamrock Ben. Soc.* 43 Mo. App. 283.

5. The waiver *vel non* of the forfeiture is a question of fact to be determined by the jury. *Hartford Life & Annuity Co.* v. *Unsell, supra; Safety Fund* v. *Windover,* 137 Ill. 417.

6. During the thirty days after disconnection, Trainor was a member for the purpose of responding to assessments. "If he were a member to respond to assessments, why was he not a member to share in benefits?" *Mutual Aid Soc.* v. *Schwartz,* 54 Ill. App. 453; *Wheeler* v. *Ins. Co.* 82 N. Y.; *Dennis* v. *Benefit Asso.* 120 N. Y. 505. Extension of time of payment inured to the representatives of the member, as well as to him. *Supreme Lodge* v. *Kalenski,* 163 U. S. 295; *Kansas Protective Union* v. *Whilt,* 36 Kan. 760; *Grand Lodge* v. *Lachman,* 101 Ill. App. 213; *Modern Woodmen* v. *Coleman,* 89 N. W. 641; *McGowan* v. *Legion,* 98 Iowa, 118.


Mr. Justice DUELL delivered the opinion of the Court:

Many errors are assigned, among them the incapacity of the plaintiffs to maintain the suit; others are based upon the admission of the Stetson letter, above referred to, and of certain oral statements made by him; upon admitting into evidence Trainor's letter of instruction to his executors; their written

application for the reinstatement of Trainor after his death, and the tender of the unpaid assessments by them; the application of Trainor for change of beneficiary; the refusal to grant certain prayers of the defendant, including one for direction of a verdict, and the grant of plaintiffs' first prayer.

While we are of the opinion that the executors are competent to maintain the suit, if the right to reinstatement after disconnection was not personal to Trainor, in view of the decision of this court in *Berkley* v. *Harper,* 3 App. D. C. 308, wherein the charter and by-laws of this appellant were before this court; and while we believe that the error, if any, in the admission of the evidence was not a material error, provided this suit could be maintained,—we have reached the conclusion that a correct determination of this appeal can be best reached by considering at the outset certain vital questions raised by the appellant's exceptions to the court's refusal to charge, as requested in its fifth prayer, and its charge, as requested in the appellees' first prayer.

These prayers are as follows:

Appellant's fifth prayer:

"The jury is instructed that if they find that Joseph Trainor was a member of the order, and was disconnected for nonpayment of dues or assessments, and failed to reinstate himself in thirty days, as provided by the by-laws of the order, then they are instructed that the right of reinstatement does not accrue to his personal representatives, and that this tender of assessments by his personal representatives will not entitle his beneficiary to recover."

Appellees' first prayer:

"The plaintiffs pray the court to instruct the jury that if they believe from the evidence that Joseph Trainor, deceased, was the insured under the policy of insurance or benefit certificate offered in evidence in this case, and they shall further find that the said Joseph Trainor in his lifetime designated the plaintiffs, Richard Bernard and Alfred D. Bernard, executors, the beneficiaries under said policy or benefit certificate by a paper writing offered in evidence as a letter of instructions, wherein the said fund is specially designated and ordered distributed; and

shall further find that the sole personal representatives and next of kin, as well as the executor, of Catherine W. Trainor, the deceased wife of the said Joseph Trainor, assigned all their right, title, and interest in said benefit certificate to the plaintiffs, then their verdict shall be for the plaintiffs, provided they shall further find that at the time of the death of the said Joseph Trainor there was a custom of the local commandery of the defendant to give the member an additional thirty days in which to pay his assessment, and shall further find that during said thirty days' extension the said assessments then due and payable were tendered to the defendant through its proper local financial secretary."

The crux of the entire case is whether the right to reinstatement after disconnection was personal to Trainor or survived to those who legally represented him.

It appears from the record, as we have stated, that Trainor became *ipso facto* disconnected from the order by his failure to pay the assessment payable not later than midnight of November 30, 1902. By-law 17, sec. 3, of the order, provides that "a member who fails to pay this '(the monthly)' assessment before midnight of the last day of the month in which it becomes due and payable shall *ipso facto* stand disconnected from his commandery and from the order, without sentence by the commandery." Section 6 provides: " * * * The disconnection or expulsion of any member shall work an immediate forfeiture of all claims of said disconnected or expelled member and of the beneficiary under his benefit certificate to any participation in the benefit fund." The benefit certificate issued to Trainor also provides that "the suspension, disconnection, or expulsion of said member shall work an immediate forfeiture of all claims of said member on the benefit fund of this order, and also a forfeiture of the claims of the beneficiaries named in this certificate."

The parties, therefore, contracted expressly that a disconnection should follow failure to pay any assessment within a given time, and that such disconnection should work a forfeiture. That it is competent to so contract is established by a long line

of authorities.  Trainor, having failed to pay the November assessment, was disconnected, and so remained at the time of his death.  The authorities are quite in accord that, where the by-laws of a fraternal and beneficial society, and the contract entered into between the member and the society, provide that forfeiture and disconnection follow the nonpayment of an assessment, the member failing to pay within the stipulated time must suffer the penalty.  Bacon, Ben. Soc. § 385; *Borgraefe v. Supreme Lodge, K. & L. of H.* 22 Mo. App. 127; *Rood v. Railway Pass. & Freight Conductors' Mut. Ben. Asso.* 31 Fed. 62; *McDonald v. Ross-Lewin,* 29 Hun, 87.

While it is competent for the party for whose benefit the conditions of forfeiture and disconnection are incorporated into the contract, as evidenced by their by-laws and benefit certificate, to waive them, we search the record in vain in this case for any evidence showing that there had at any time been a waiver of the terms of the contract as embodied in the benefit certificate and the by-laws as to disconnection and forfeiture.  Nowhere does it appear that the local officers of the commandery have waived, or ever attempted to waive, the provisions of the contract relative to disconnections; and much less is it shown that the appellant ever gave such authority to the local officers or agents, or had any knowledge that they exercised it.  The rule as to the waiver of conditions contained in contracts, and especially of conditions in insurance policies, is authoritatively laid down by the United States Supreme Court in *Northern Assur. Co.* v. *Grand View Bldg. Asso.* 183 U. S. 308, 46 L. ed. 213, 22 Sup. Ct. Rep. 133, where it is stated, after an exhaustive review of the cases in the Federal, state, and English courts on the subject, "that where the waiver relied on is an act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent." The receipt of overdue assessments which are paid within the time provided for and prescribed by the by-laws is not evidence of a waiver of the disconnection, where a party has the absolute right, as in this case, to pay the overdue assessments within

thirty days after his disconnection; nor is a failure on the part of the collecting officer or other agent of the local commandery, though as collecting agent he may act for the supreme commandery, to notify the supreme commandery of the disconnection of the member, where that disconnection has been overcome by the payment of the overdue assessment. The evidence in this case goes only to the extent of showing that notices of disconnections were not sent to the supreme commandery by the officer of Trainor's commandery upon whom the duty devolved, until the 10th of the month following any such disconnection which arose from the failure to pay the assessment on or before midnight of the last day of the preceding month, but that Trainor and other members repeatedly paid, or had paid for them, these overdue assessments, and that their names were not forwarded as having been disconnected. Admitting all this to be true, it does not, in our opinion, amount to a waiver, even had it been authorized by or known to the supreme commandery. If an earlier notice was required by any rule or regulation of the supreme commandery, it would amount to nothing, for the disconnection followed the failure to pay the assessment, and notice thereof to the supreme commandery made it no more effectual. These disconnections generally amounted to nothing, and evidently had no terrors for the members of Halcyon Commandery, and probably not for the members of other commanderies, the reason for this being, as stated, that the disconnected member could be reinstated at any time within thirty days from the date of his disconnection by simply paying the overdue assessment and any fine that the commandery might by by-law fix. No medical examination was required, nor was it necessary to make any formal application for restoration. By-law 12, sec. 3, provides for this:

"Persons who have been members of the order, but are disconnected for the nonpayment of dues or assessments, desiring again to obtain membership, can do so, within thirty days after their disconnection, on payment of the arrears for which they were disconnected and such a fine as the commandery may by by-laws provide."

Therefore every member who had not been disconnected for

more than thirty days had the absolute right, at the meetings of the commandery held on the 10th day of each month, to pay his overdue assessment, and the collecting agent for the commandery, in accepting such payments, exercised no discretion, but was compelled to receive them, and in receiving them he did not waive the prior disconnection of a member. The disconnection ended simply by the payment of the overdue assessment. The payment *ipso facto* worked a restoration to membership as automatically as a failure to pay the assessment at the last hour of grace worked a disconnection. Trainor was disconnected at the hour of his death, though he then had an absolute right to reinstatement by simply paying the overdue assessment, and, this being the fact, it brings us to the real question to be determined, *i. e.*, whether that right survived. If this question be answered in the negative, the court below was in error in refusing the appellant's fifth prayer and in granting appellees' first prayer.

While there is some conflict of authority on this point, the weight of authority is to the effect that such right of reinstatement does not survive, but, in these fraternal and beneficial orders, is personal to the members. The penalty of disconnection is probably the most effective aid to enforce the payment of assessments. The payment of these assessments is absolutely essential to the existence of the order. As was said in *Modern Woodmen* v. *Tevis,* 54 C. C. A. 293, 117 Fed. 369: "Fraternal insurance is temporary insurance,—insurance from the maturity of one assessment to the maturity of another,—and stipulations to insure promptitude in the payment of the assessments constitute both the substance and the essence of contracts for it." It will be pertinent to refer to a few of the cases sustaining the proposition that this right of reinstatement does not survive to the representative of the deceased member. *Yoe* v. *Benjamin C. Howard Masonic Mut. Benev. Asso.* 63 Md. 86, the opinion in which was written by the late chief justice of this court, says:

"The obligation to pay the death assessment is personal to the member, and it must, according to the terms of the article referred to, be paid in his lifetime, for if he dies before payment

no representative of his is authorized to pay for him, in order to entitle the intended beneficiary to receive the mortuary aid from the association. The payment is to be made by the member as such, and in case of his default he ceases to be a member, and he forfeits all claim upon the association. The member failing in his lifetime to make payment, and the thirty days having expired before his death, and no one being authorized to make it after his death, to hold the association liable, notwithstanding no payment of the assessment had been made, would be to disregard the mutuality of obligation of members, as well as do violence to the terms and plain intent of the article of the association which we have quoted.  *  *  *  The thirty days' grace was for his convenience and accommodation, and, though he had the full period of thirty days within which he could make the payment, yet, if he thought proper to defer payment to the last hour of that period, the delay was at his own risk, and not that of the association. Here the full thirty days had expired without payment, and the party died two days thereafter, and, that being the case, he was not a member when he died, having by his default lost his membership and all the· benefits appertaining thereto."

*Carlson* v. *Supreme Council A. L. of H.* 115 Cal. 466, 35· L. R. A. 643, 47 Pac. 375, is a case very similar to the one now under consideration. The insured failed to pay a certain assessment, and for such failure, under the by-laws, stood suspended. He had the right, as in this case, to be reinstated within a certain time by payment of past-due assessments. He died before the expiration of the time when, if living, he could have paid the assessments and been reinstated. The beneficiary tendered the assessments due the association, but they were refused upon the ground that a dead man could not be reinstated. It was urged that, as the insured died within the time within which he was entitled to pay the back assessments and be restored to· membership, this right of reinstatement passed to his legal representative, notwithstanding his disconnection. The court, however, held that the forfeiture took place as soon as there was failure to pay the assessment, and that, though, had he survived, he;

would have had the right to pay the arrears within sixty days, such payment would not have defeated the forfeiture, but merely have ended it, and that this option was personal to himself. The opinion quotes from Niblack on Benefit Societies, § 299, to the effect that:

"Where a member had been suspended for nonpayment of an assessment and he had neglected during his lifetime to secure his reinstatement in accordance with the terms of his certificate by paying arrearages while in good health and within a certain time, his restoration to membership cannot be effected after his death by payment by another person, within the time limited, of the sum due from him at the time of his death."

To the same effect are the cases of *Supreme Lodge K. of H.* v. *Jones* (Ind. App.) 69 N. E. 718, and *Maginnis* v. *New Orleans Cotton Exch. Mut. Aid Asso.* 43 La. Ann. 1136, 10 So. 180.

The case of *Dennis* v. *Massachusetts Ben. Asso.* 120 N. Y. 469, 9 L. R. A. 189, 17 Am. St. Rep. 660, 24 N. E. 843, cited by the appellees in support of their contention that the right to reinstatement survives, is not in point, and may be reconciled with the cases holding to the contrary. The opinion in that case expressly states:

"If the certificate in question had provided without qualification that for a failure to pay an assessment within thirty days after the mailing of a notice thereof by the defendant it should 'lapse and be void,' its invalidity would be established beyond dispute."

Furthermore, the facts are quite different from those in the case at bar.

We conclude that the right to reinstatement was personal to Trainor and did not survive to his legal representatives, and that, therefore, there was error in the judgment rendered by the Supreme Court of the District of Columbia in the premises, and that the judgment should be reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion. And it is so ordered.         *Reversed.*